**HOOSIER ENERGY RURAL ELECTRIC COOPERATIVE, INC., et al., Petitioners,**

v.

**DEPARTMENT OF LOCAL GOVERN-MENT FINANCE,[1] Respondent.**

No. 49T10–0007–TA–85.

Tax Court of Indiana.

Dec. 23, 2004.

J. David Huber, Donald L. Hawk, Christoper M. Goffinet, Zoercher, Huber, McEntarfer & Goffinet, Tell City, IN, Attorneys for Petitioners.

Steve Carter, Attorney General of Indiana, Indianapolis, IN, Joel Schiff, Deputy Attorney General, Indianapolis, IN, Attorneys for Respondents.

FISHER, J.

Hoosier Energy Rural Electric Cooperative, Inc. (Hoosier Energy), Bartholomew County Rural Electric Membership Corporation, Clark County Rural Electric Membership Corporation, Daviess–Martin County Rural Electric Membership Corporation, Decatur County Rural Electric Membership Corporation, Dubois County Rural Electric Cooperative, Inc., Harrison County Rural Electric Membership Corporation, Henry County Rural Electric Membership Corporation, Johnson County Rural Electric Membership Corporation, Orange County Rural Electric Membership Corporation, RushShelby Rural Elec-

---

1. The State Board of Tax Commissioners (State Board) was originally the Respondent in this appeal. However, the legislature abolished the State Board as of December 31, 2001. 2001 Ind. Acts 198 § 119(b)(2). Effective January 1, 2002, the legislature created the Department of Local Government Finance (DLGF), *see* Indiana Code § 6–1.1–30–1.1 (West Supp.2004)(eff. 1–1–02); 2001 Ind. Acts 198 § 66, and the Indiana Board of Tax Review (Indiana Board). IND.CODE ANN. § 6–1.5–1–3 (West Supp.2004)(eff.1–1–02); 2001 Ind. Acts 198 § 95. Pursuant to Indiana Code § 6–1.5–5–8, the DLGF is substituted for the State Board in appeals from final determinations of the State Board that were issued before January 1, 2002. IND.CODE ANN. § 6–1.5–5–8 (West Supp.2004)(eff.1–1–02); 2001 Ind. Acts 198 § 95. Nevertheless, the law in effect prior to January 1, 2002 applies to these appeals. A.I.C. § 6–1.5–5–8. *See also* 2001 Ind. Acts 198 § 117. Although the DLGF has been substituted as the Respondent, this Court will still reference the State Board throughout this opinion.

tric Membership Corporation, South Central Indiana Rural Electric Membership Corporation, Southeastern Indiana Rural Electric Membership Corporation, Southern Indiana Rural Electric Cooperative, Inc., Utilities District of Western Indiana Rural Electric Membership Corporation, Whitewater Valley Rural Electric Membership Corporation, and Western Indiana Rural Electric Membership Corporation (the REMCs), hereinafter referred to, collectively, as the Petitioners, appeal the State Board of Tax Commissioners (State Board) final assessments of their distributable property for the 1999 and 2000 tax years (the years at issue). The sole issue before the Court is whether the State Board erred in not assessing the Petitioners' property on a consolidated basis during the years at issue.

## RELEVANT FACTS AND PROCEDURAL HISTORY

Hoosier Energy is a public electric utility organized and operating as a general district corporation under Indiana's Rural Electric Membership Corporation Act (the Act). *See* IND.CODE ANN. § 8–1–13–1 *et seq.* (West 2004). As a general district corporation, Hoosier Energy furnishes utility services to the local district corporations, which in turn provide utility services to the ultimate consumers. *See* IND.CODE ANN. § 8–1–13–23 (West 2004). In this case, Hoosier Energy operates the generating plants and transmission lines for the system of which it is a part.

Hoosier Energy is owned by sixteen local rural electric membership corporations (the REMCs). Each of these sixteen REMCs is also a public utility company, operates as a local district corporation un-

der the Act, has a representative sitting on Hoosier Energy's Board of Directors, and is a Petitioner to this case. As local district corporations, each of the REMCs owns and operates its own distribution lines for delivery of the electricity to the ultimate consumer. Consequently, each of the REMCs has a separate agreement with Hoosier Energy for the purchase of its electricity.[2]

In March of 1999, the Petitioners sought the State Board's permission to file a consolidated property tax return. The State Board, in exercising its discretion under Indiana's Administrative Code, did not respond to this request. *See* IND. ADMIN. CODE tit. 50, r. 4.2–1–6 (1996). Consequently, each of the Petitioners filed individual returns for the 1999 assessment year. Nevertheless, each of the Petitioners filed with their individual returns a schedule indicating the property value of the entire group as calculated on a consolidated basis.

In May of 1999, the State Board issued its tentative assessments on each of the Petitioner's properties. Each of the Petitioners timely filed objections thereto. Consequently, the State Board conducted an administrative hearing on the objections on June 2, 1999. On June 30, 1999, the State Board issued a final determination ordering that the tentative assessments be made final, and denying the Petitioners' request to file a consolidated return. The Petitioners subsequently initiated an original tax appeal on July 16, 1999.

For the 2000 assessment, each of the Petitioners again attached a schedule computing the value of the Petitioners' property on a consolidated basis with

**2.** In addition, each REMC has a separate contract with Hoosier Energy for the provision of some centralized services, including market-

ing and business development, finance and strategic planning services, and environmental services. (*See* J. Ex. 1 at 3.)

their individual returns. The State Board subsequently issued tentative assessments on each of the Petitioner's properties. Each of the Petitioners timely filed objections thereto. The State Board conducted an administrative hearing on the Petitioners' objections on June 13, 2000. On June 29, 2000, the State Board issued its final determination ordering that the tentative assessments be made final, and denying the Petitioners' request to file a consolidated return. The Petitioners subsequently initiated an original tax appeal on July 14, 2000.

On September 25, 2000, upon the Petitioners' motion, this Court consolidated the Petitioners' 1999 and 2000 appeals. This Court conducted a trial on May 25, 2001, and heard the parties' oral arguments on November 16, 2001. Additional facts will be supplied as necessary.

### STANDARD OF REVIEW

When this Court reviews a State Board assessment of public utility property, its standard of review is set by statute:

When a public utility company initiates an appeal under section 30 [of Indiana Code § 6–1.1–8], the tax court may set aside the state board of tax commissioners' final assessment ... if:

(1) the company shows that the board's final assessment, or the board's apportionment and distribu-

tion of the final assessment, is clearly incorrect because the board violated the law or committed fraud; or

(2) the company shows that the board's final assessment is not supported by substantial evidence.

IND.CODE ANN. § 6–1.1–8–32 (West 1999) (amended 2001). "Substantial evidence 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Glass Wholesalers, Inc. v. State Bd. of Tax Comm'rs*, 568 N.E.2d 1116, 1122 (Ind. Tax Ct.1991) (internal quotation and citation omitted).

### DISCUSSION AND ANALYSIS

The issue in this case is whether the State Board erred in not allowing the Petitioners to file consolidated returns for the years at issue. As the Petitioners explain, by filing a consolidated return, they would have been able to take advantage of "additional" depreciation, thereby reducing their overall assessment. For example, for the 1999 tax year, the State Board found that the assessed value of the Petitioners' distributable property, combined, was $122,183,414; however, if the Petitioners would have been able to file a consolidated return, they claim that the assessed value of their distributable property would have only been $101,295,226. (*See* Pet'rs Ex. 5.)[3] To support their argument that they are entitled to file consolidated re-

---

**3.** Generally, the assessed value of a public utility's depreciable tangible personal property is computed based upon the original basis of each asset for federal depreciation purposes, less the accumulated depreciation relative to that asset. To the extent that the aggregate net value of all of the distributable tangible personal property of a utility company is less than 30% of the original basis, the deduction of accumulated depreciation is disallowed. *See* IND. ADMIN. CODE tit. 50, r. 5.1–6–9 (1996).

By filing a consolidated return, the Petitioners would have been able to apply the 30% floor to all of the Petitioners' distributable property, as opposed to only a portion of each Petitioner's property. "The reason th[is] happens is because Hoosier[ Energy's] power plants and transmission lines are depreciated well below the 30% floor. The other Petitioners' distribution lines, if separately assessed, are still above the floor. If combined, all the system property would be below the floor, and the assessment would therefore be raised to the 30% floor, which is well below the assessment made by the State Board in both 1999 and 2000." (Pet'rs Br. at 17.)

turns, the Petitioners state that three investor-owned electric utilities (IOUs) have been permitted to file consolidated returns.[4] (*See* Pet'rs Br. at 15 (footnote added).) Thus, the Petitioners merely want "equal treatment." (Pet'rs Br. at 15.) To the extent that they are not receiving "equal treatment," the Petitioners claim the State Board has violated Article 10, § 1 of the Indiana Constitution, which provides that

> [t]he General Assembly shall provide, by law, for a uniform and equal rate of property assessment and taxation and shall prescribe regulations to secure a just valuation for taxation of all property, both real and personal.

IND. CONST. art. X, § 1(a).[5]

The State Board, on the other hand, argues that the Petitioners are not entitled to file consolidated returns because they have not proven that they are similarly situated to the IOUs that filed the consolidated returns. (*See* Resp't Br. at 14.) More specifically, the State Board asserts that unlike the IOUs, the Petitioners do not share a single parent company; rather they are all separate legal entities. (*See, e.g.,* J. Ex. 2 at 5–8; J. Ex. 3 at 10–12; J. Ex. 5 at 7–8.) Thus, the "Petitioners have not proven that the substance of the organizational structure of Hoosier Energy and ... each individual REMC[ ] is equivalent to that of investor owned utilities that have one parent company." (*See, e.g.,* J. Ex. 2 at 8; J. Ex. 3 at 12; J. Ex. 5 at 8.) In turn, the State Board complains that the Petitioners are merely attempting "an improper 'end-run' around the regulation [Indiana Administrative Code title 50, rule

5.1–6–9] limiting depreciation." (Resp't Br. at 20 (citation omitted).)

While the Court ultimately agrees with the State Board in result, it does not agree with its reasoning. Indeed, both parties have spent a great deal of time and paper arguing about how the Petitioners' organizational structure should affect their assessment, but they have "skirted" the real issue in this case: whether a public utility company may file a consolidated return in the first place.

Public utilities are subject to the centralized assessment scheme contained within Indiana Code § 6–1.1–8. Consequently, public utility companies do not file "property tax returns" in the traditional sense. Rather, during the years at issue, they filed "statements of value" with both the State Board and the appropriate local assessing authorities. *See* IND.CODE ANN. § 6–1.1–8–19 (West 1999) (amended 2002); IND.CODE ANN. § 6–1.1–8–23 (West 1999) (amended 2002). After these statements were filed, the appropriate township assessors determined the assessed value of each public utility's fixed property, while the State Board determined the assessed value of the public utility's distributable property. *See* IND.CODE ANN. § 6–1.1–8–24 (West 1999) (amended 2002); IND.CODE ANN. § 6–1.1–8–9 (West 2004); IND.CODE ANN. § 6–1.1–8–25 (West 1999) (amended 2002); A.I.C. § 6–1.1–8–9(b). Then, on or before June 1st of each year, the State Board issued a tentative valuation of each public utility's overall property. *See* IND.CODE ANN. § 6–1.1–8–26, –28 (West 1999) (amended 2002).

---

**4.** Each of the three IOUs consists of a holding company and its wholly-owned subsidiaries. (*See* J. Ex. 1 at 13.)

**5.** In other words, the Petitioners assert that the State Board is simply unable and unwilling "to articulate ... why or how the differ-

ence in Petitioners' organizational structure from that of an [IOU] can justify assessing exactly the same type of property in a different and discriminatory manner." (Pet'rs Reply Br. at 3.)

Indiana Code § 6–1.1–8 is completely silent with respect to the filing of consolidated returns by public utilities, as are the administrative regulations applicable to public utility assessment. *See* IND. ADMIN. CODE tit. 50, r. 5.1–6 (1996). This Court has often said that what a statute or regulation does not say is just as important as what it does say. *See LeSea Broad. Corp. v. State Bd. of Tax Comm'rs,* 525 N.E.2d 637, 639 (Ind. Tax Ct.1988). *See also Western Select Prop. v. State Bd. of Tax Comm'rs,* 639 N.E.2d 1068, 1073 (Ind. Tax Ct.1994) (stating that rules of statutory construction also apply to administrative rules and regulations). This leads the Court to the conclusion that the statutes and regulations relating to public utility assessment were drafted with the intent that public utilities cannot file consolidated returns.[6]

As mentioned earlier, the Petitioners' entire argument is based on the fact that because three other public utilities were allowed to file consolidated returns, the Petitioners, likewise, are entitled to such a filing. The fact that those other public utilities filed consolidated returns, however, will be of no consequence to the treatment the Petitioners seek. Indeed, there is no sound reason to give the Petitioners the benefit of the State Board's misinterpretation and misapplication of the law simply because someone else may have previously benefited from the same mistake; to do so would only exacerbate the inequity for everyone else.

## CONCLUSION

For the foregoing reasons, this Court hereby AFFIRMS the State Board's final determinations in this case.

---

6. The body of statutory law that pertains to the assessment of personal property in general does allow for the filing of consolidated returns. *See* IND.CODE ANN. § 6–1.1–3–7(d) (West Supp.2004) (stating that a taxpayer may file a consolidated return with the county assessor "if the taxpayer has personal property subject to assessment in more than one (1) township in a county and the total assessed value of the personal property in the county is less than one million five hundred thousand dollars ($1,500,000)"). Nevertheless, this statute has no applicability to public utility assessments. Indeed, Indiana Code § 6–1.1–8–43 expressly provides that:

> [Indiana Code § 6–1.1–8] is designed to provide special rules for the assessment and taxation of public utility company property. If a provision of [chapter 8] conflicts with any provision of another chapter of [article 1.1], the provision of this chapter controls with respect to the assessment and taxation of public utility company property.

IND.CODE ANN § 6–1.1–8–43 (West 2004).