STATE of Indiana, Appellant–Plaintiff,

v.

Garry MASON, Appellee–Defendant.

No. 49A02–0412–CR–1037.

Court of Appeals of Indiana.

June 28, 2005.

---

---

Steve Carter, Attorney General of Indiana, Ryan D. Johanningsmeier, Deputy Attorney General, Indianapolis, for Appellant.

Thomas W. Farlow, Julia Blackwell Gelinas, Lucy R. Dollens, Locke Reynolds LLP, Indianapolis, for Appellee.

## OPINION

KIRSCH, C.J.

Garry Mason was charged with promoting prostitution,[1] as a Class B felony, child

---

1. *See* IC 35–45–4–4. Promoting prostitution is charged as a Class C felony crime unless the person enticed or compelled to become a prostitute is under 18 years old. When mi-

exploitation,[2] a Class C felony, and possession of marijuana,[3] as a Class A misdemeanor. Mason filed a motion to suppress evidence obtained pursuant to a search warrant. The trial court granted the motion to suppress, and the State dismissed the case and brings this appeal. We consider the following issues:[4]

I. Whether the probable cause affidavit provided a substantial basis to establish probable cause for the search warrant where police failed to corroborate an anonymous informant's hearsay statements concerning Mason's alleged criminal activity.

II. Assuming that the search warrant and the affidavit of probable cause are invalid, whether law enforcement officers acted in good faith when they executed the warrant and relied upon a judicial finding of probable cause.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On March 2, 2004, Crime Stoppers of Central Indiana ("Crime Stoppers") received an anonymous tip that a white male named Garry Mason, approximately 50 years old, was taking young girls to his home at 3038 South Chase Street, Indianapolis, Indiana. The tipster stated that Mason was paying the girls, reportedly between the ages of 14 and 17, to have sex with him. Additionally, the informant said that Mason drove a tan Mazda pickup truck. The tip contained no information or facts concerning how the informant became suspicious or learned of Mason's alleged criminal activity.

Crime Stoppers forwarded the tip to the Crime Action Team of the Indianapolis Police Department ("IPD"). Subsequently, IPD researched records and confirmed that a white male named "Garry Lee Mason," age 51, resided at 3038 South Chase Street in Indianapolis. IPD also obtained a photograph of Mason from the Bureau of Motor Vehicles.

According to an affidavit for probable cause, the affiant, IPD Detective Sheryl McGlinsey, and IPD Detective Andrew Starks drove past the Mason residence on March 7, 2004. Detective McGlinsey described the house as a two-story single-family dwelling with gray siding. The detectives observed a tan Mazda pickup truck parked in front of the house. IPD began surveillance of Mason's house the next day, and IPD officers observed a person matching Mason's description coming and going from the residence and driving the tan Mazda pickup truck.

At about 5:00 p.m. on March 9, 2004, IPD Detectives Starks and Thomas Hildebrand watched as Mason left his house with an unidentified female, described as white, 15 to 17 years old, with a thin build and blond hair. Mason and the girl drove off in the pickup truck, and the detectives followed them. Mason dropped the girl off at about 5:30 p.m. in a neighborhood south of Fountain Square. The detectives continued to follow Mason as he returned to his house.

nors are involved, the crime is charged as a Class B felony.

**2.** *See* IC 35–42–4–4.

**3.** *See* IC 35–48–4–11.

**4.** The State is appealing the trial court's granting of Mason's Motion to Suppress pursuant to IC 35–38–4–2(5), which provides that appeals may be taken "[f]rom an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution."

On March 10, 2004, Detective McGlinsey prepared an affidavit for probable cause that included details about the anonymous tip and the results of the investigation by IPD detectives as described above. On Monday, March 11, 2004, Detective McGlinsey presented the affidavit and a search warrant to Commissioner Jane Conley ("Commissioner") of Marion Superior Court 13 ("Court 13"), seeking authorization to search Mason's residence and truck for "photographs, videos, DVD's [sic], downloaded files from internet sources, computers and software or any indicia of sexual crimes against minors." *Appellant's Appendix* at 113.

The Commissioner signed the search warrant at 9:00 a.m. that same day, but Detective McGlinsey neither left a copy of the warrant and supporting affidavit with the Commissioner nor filed the documents with the Marion County Clerk's Office ("Clerk"). Detective McGlinsey explained later that IPD trained her to wait to file the warrant and affidavit at the time she makes the return.[5] *Appellee's Supplemental Appendix* at 56. Detective McGlinsey testified that the Commissioner did nothing different than she had observed any other judge do with a search warrant when the Commissioner read the documents, signed the warrant, and handed the signed warrant and affidavit back to the detective. *Transcript* at 149.

Detectives conducted the search on March 15, 2004, and seized certain property. Counsel for Mason attempted to obtain a copy of the warrant and the affidavit from IPD, but his request was refused. On March 22, 2004, Mason's attorney contacted the Clerk to view or obtain a copy of the affidavit, but was told that no such record had been provided to the Clerk.[6] On March 23, 2004, counsel for Mason attempted to file a document entitled "Verified Request for the Issuance of an Order to the Indianapolis Police Department to Return All Property Seized" with Court 13. According to counsel, Court 13 would not file the document absent a cause number under which to file it. *Appellant's Appendix* at 93. Also, the Clerk refused to assign a miscellaneous cause number to the matter and advised Mason's attorney to see the Marion County Prosecutor, who assigns cause numbers in criminal matters. *Id.*

After Court 13 refused to file Mason's request for return of property, Mason's attorney filed with the Clerk a Verified Complaint for Preliminary and Permanent Injunction ("Verified Complaint") against IPD and its police chief, Jerry Barker. The Clerk assigned the matter to Civil Division 10 of Marion Superior Court. The Honorable David Dryer conducted a hearing on the request for injunctive relief on March 26, 2004. Also at that time, Chief Barker and IPD filed a motion to dismiss based on lack of subject matter jurisdiction as the search warrant was issued by Court 13. Judge Dryer, however, did not dismiss the Verified Complaint, and the matter eventually was transferred

---

**5.** IC 35–33–5–2(a) requires that an affidavit for probable cause must be filed with the judge before a warrant for search or arrest is issued. Once the search is completed, IC Section 35–33–5–4(1) provides that "[t]he officer who executed the warrant shall make a return on it directed to the court or judge, who issued the warrant, and this return must indicate the date and time served and list the items seized."

**6.** The Clerk maintains a "repository," which includes search warrants and their supporting affidavits for probable cause. *Supplemental Appendix* at 28. Apparently, at the time Mason's counsel contacted the Clerk, IPD had not yet provided a copy of these documents to place in this repository.

to Marion Superior Court, Criminal Division 5, under cause number 49G05–0405–FB–080284, for consolidation with the criminal case against Mason.[7]

On April 8, 2004—28 days after the Commissioner signed the search warrant—Detective McGlinsey filed the search warrant and affidavit for probable cause with the Clerk. Detective McGlinsey explained that the delay in preparing the return was the "tremendous amount of items" seized during the search and that she was unable to complete the return before going on vacation. *Appellee's Supplemental Appendix* at 53. The return listed the following property seized during the search: computer monitor and tower, printer/keyboard, video camera, one box containing videos and photographs, one box containing miscellaneous items, two guns, marijuana, and miscellaneous paperwork. *Appellee's Brief* at 5; *Appellant's Appendix* at 113.

The prosecutor filed an information and probable cause affidavit on May 12, 2004, charging Mason with promoting prostitution, child exploitation, and possession of marijuana.

Mason filed a motion to suppress on June 10, 2004. The trial court held a hearing on the motion to suppress on July 29, 2004, granting the motion based upon a determination that the search warrant and affidavit lacked probable cause. The trial court rejected the State's argument that the evidence should not be excluded because the police detectives executed the warrant in good faith and in reliance upon the Commissioner's finding of probable cause. After the trial court denied the State's Petition to Reopen Hearing on Defendant's Motion to Suppress and Motion to Correct Error, the State moved to dismiss the criminal charges against Mason, which the court granted.

## DISCUSSION AND DECISION

The State appeals the trial court's grant of Mason's motion to suppress evidence due to a lack of probable cause supporting the warrant. The State does not challenge the validity of the warrant itself. Rather, the State claims that the trial court erred in excluding the evidence because the IPD officers who conducted the search did so in good faith and in reliance upon the Commissioner's determination of probable cause.

The State, on review, "bears the burden of demonstrating the constitutionality of the measures it uses in securing information." *State v. Farber*, 677 N.E.2d 1111, 1113 (Ind.Ct.App.1997), *trans. denied.* Furthermore:

> On appeal from the grant of a motion to suppress[,] the State appeals from a negative judgment and must show the trial court's ruling on the suppression motion was contrary to law. . . . We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. . . . We neither reweigh the evidence nor judge the credibility of witnesses; rather we consider only the evidence most favorable to the judgment.

*Id.* at 1113–14 (internal citations omitted).

### I. Probable Cause

The Fourth Amendment to the United States Constitution, Article 1, Section 11 of the Indiana Constitution, and IC 35–33–5–1 all require that a search war-

---

**7.** It appears from the record before us that the Verified Complaint was transferred to the criminal court on or about May 14, 2004, shortly after charges were filed against Mason.

rant must be supported by probable cause. We accord significant deference to a magistrate's probable cause determination, but we review the trial court's ruling on a motion to suppress evidence de novo. *Methene v. State,* 720 N.E.2d 384, 388 (Ind.Ct.App.1999); *Hensley v. State,* 778 N.E.2d 484, 487 (Ind.Ct.App.2002).

 On review, we are required to determine whether the Commissioner had a "substantial basis" for concluding that probable cause to support the search warrant existed. *Query v. State,* 745 N.E.2d 769, 771 (Ind.2001) (quoting *Illinois v. Gates,* 462 U.S. 213, 238–39, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). We establish whether a substantial basis existed by focusing on whether reasonable inferences drawn from the totality of the evidence support the trial court's ruling. *Methene,* 720 N.E.2d at 388. In order to determine whether the totality of the circumstances corroborates the hearsay allegations of an informant, we must consider "whether there is a fair probability, given all the circumstances, including the veracity and basis of knowledge of the person supplying the hearsay information, that evidence of a crime will be found in a particular place." *Lloyd v. State,* 677 N.E.2d 71, 74 (Ind.Ct.App.1997), *trans. denied.*

 The determination concerning whether the amount of information provided to the issuing magistrate constitutes probable cause is made on an individual, case-by-case basis. *Bryant v. State,* 655 N.E.2d 103, 107 (Ind.Ct.App.1995). We review the trial court's decision granting the motion to suppress by considering only the evidence presented to the magistrate who issued the search warrant. *Lloyd,* 677 N.E.2d at 74. We will not consider "post hoc justifications" for the search. *Id.*

In determining whether the search warrant in question was supported by proba-ble cause, both Indiana statutory law and rulings by the United States Supreme Court are instructive. IC 35–33–5–2(b) requires that a probable cause affidavit must either:

(1) contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay and establishing that there is a factual basis for the information furnished; or

(2) contain information that establishes that the totality of the circumstances corroborates the informant's statements.

Additionally, while recognizing that hearsay from informants' tips "doubtless come in many shapes and sizes from many types of persons" and that "[r]igid legal rules are ill-suited to an area of such diversity," the United States Supreme Court has stated that "uncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause." *Jaggers v. State,* 687 N.E.2d 180, 182 (Ind.1997) (quoting *Gates,* 462 U.S. at 227, 232, 103 S.Ct. at 2326, 2329).

In *Gates,* the United States Supreme Court noted that a court may consider several factors to establish the trustworthiness of hearsay for purposes of providing probable cause, including:

(1) the informant has given correct information in the past;

(2) independent police investigation corroborates the informant's statements;

(3) some basis for the informant's knowledge is shown; or

(4) the informant predicts conduct or activities by the suspect that are not ordinarily easily predicted.

*Jaggers,* 687 N.E.2d at 182 (citing *Gates,* 462 U.S. at 227, 103 S.Ct. at 2326).

In *Jaggers,* police corroborated the informant's allegations that "marijuana was being grown on two plots of land miles from Jaggers's residence and that Jaggers appeared to live where the informant said he lived—nothing more." *Jaggers,* 687 N.E.2d at 182. Our supreme court determined that the search warrant lacked a substantial basis to establish probable cause where police had not corroborated "[t]he critical claim here—that Jaggers was cultivating and trafficking marijuana in his house and also controlled the off-site plots...." *Id.* Additionally, the informant in *Jaggers* was anonymous, rendering it impossible to establish his or her credibility—a factor that was of equal significance to the court's determination that the search warrant lacked probable cause.

Here, the police corroborated most of the anonymous informant's allegations by confirming that a white male named Garry Mason, who was about 50 years old, resided at 3038 South Chase Street, and that Mason drove a tan Mazda pickup truck. Police failed, however, to corroborate the "critical claim" that Mason was engaged in criminal activity, i.e., that he was paying young girls between the ages of 14 and 17 to have sex with him. While they observed a white female teenager, described by the detectives as 15 to 17 years of age, leaving Mason's house and Mason driving the young girl in the pickup to a point about 30 minutes from his residence where he dropped her off, there is nothing in this observation that corroborates the criminal activity allegations. As in *Jaggers,* the critical claim—that Mason was involved in illegal activities—was "entirely uncorroborated." *Jaggers,* 687 N.E.2d at 182. Also, police officers made no attempt to ascertain the girl's identity, age, or reason for being at Mason's house. The record

before us contains nothing to show that police made more effort to corroborate the informant's allegations of criminal activity.

Moreover, police investigators cannot tell us anything about the anonymous informant that might lend credibility to this portion of the tip or whether the tipster had a less than admiral reason for accusing Mason of wrongful acts. Our supreme court has noted that "[a]nonymity effectively shields from scrutiny any possible ulterior motives; the situation is rife with the potential for pranks and mischief." *Id.* at 182–83. The court further cautions that "some corroboration of the accusations is all the more essential when the informant is anonymous." *Id.* at 183.

In addition to the federal and state constitution violations, the search warrant fails to meet the requirements of IC 35–33–5–2(b), the General Assembly's codification of the doctrine that has developed under the Fourth Amendment concerning the use of informants to establish probable cause. *Jaggers,* 687 N.E.2d at 183. Thus, our supreme court has held that "[w]hen seeking either a search or an arrest warrant, the police must follow the warrant statute, which specifies the minimum information necessary to establish probable cause." *Id.* (quoting *Esquerdo v. State,* 640 N.E.2d 1023, 1029 (Ind.1994); citing *Houser v. State,* 678 N.E.2d 95, 99 (Ind. 1997)).

In the present case, Detective McGlinsey's affidavit failed to establish probable cause through either of the two methods provided by subsection (b). First, it failed to fulfill the requirements of Subsection (b)(1) because police investigators were unable to establish the credibility of the anonymous informant and a factual basis supporting the tipster's allegations that Mason was involved in criminal activity. Also, the affidavit fails under both subsections (b)(1) and (b)(2), which requires that

hearsay statements must be corroborated by the totality of the circumstances.

As the result of their investigation, detectives confirmed only "easily obtained facts and conditions existing at the time of the tip." *Newby v. State*, 701 N.E.2d 593, 601 (Ind.Ct.App.1998) (quoting *Gates*, 462 U.S. at 245, 103 S.Ct. at 2335). In *Newby*, we determined that "facts describing [the defendant's] residence were easily observable and within the public domain" and thus failed to establish the credibility of the informant. 701 N.E.2d at 601. *See also Jaggers*, 687 N.E.2d at 184 (police investigation confirming facts about the location of Jaggers's house and two marijuana patches were "unremarkable" and failed to meet the requirement of subsection (b)(2) that the totality of the circumstances must corroborate the informant's hearsay).

As in *Jaggers* and *Newby*, the police investigation of Mason merely confirmed facts that were easily observable to anyone who knew where Mason lived and could describe the type of vehicle that he drove. Other facts concerning the young girl observed leaving with Mason failed to confirm that Mason was engaged in any type of criminal activity involving the girl or any other female, regardless of her age.[8]

Finally, we note that the information provided through the anonymous tip does not "involve the verification of accurate predictions of future actions of a third party, an important factor in *Gates*, which would give the court a substantial basis to believe that the informant had access to reliable information concerning illegal activities . . . ." *Bradley v. State*, 609 N.E.2d 420, 423 (Ind.1993) (citing *Gates*, 462 U.S. at 245, 103 S.Ct. at 2335). In *Bradley*, our

supreme court noted that the affidavit in question failed to corroborate an anonymous informant's hearsay through the totality of the circumstances because it did not provide a connection between the crime and the defendant or between the stolen property and the place searched. *Id.* The absence of such connections was a factor the court weighed heavily in finding that the affidavit at issue lacked probable cause. *Id.* (confirmation that defendant had prior robbery arrests, that he resided at the address given in the tip, and that a crime fitting the description of the one related by the informant had actually occurred did not constitute probable cause to believe that the anonymous caller was telling the truth, or that the search at that address would yield fruits of the crime).

Significantly, the affidavit concerning Mason's alleged crimes is even more deficient than the affidavit at issue in *Bradley* because there is no factual basis provided to indicate that such crimes actually took place or that Mason or his house was connected to them.

In sum, the affidavit shed no light on the credibility of the anonymous informant who implicated Mason, and the totality of the circumstances does not corroborate the hearsay statements about Mason's alleged criminal activity. The trial court, therefore, appropriately granted Mason's motion to suppress the evidence obtained as a result of the search warrant at issue.

## II. Good Faith Exception

▇▇▇▇▇▇ The State argues that, notwithstanding a determination that the affidavit in support of the search warrant lacks probable cause, the officers acted in good faith in executing the search warrant

---

**8.** As noted earlier, the sanctions for promoting prostitution are more severe when the crime involves a minor but nevertheless is prosecutable regardless of the age of the alleged prostitute. Obviously, a charge of child exploitation is prosecutable only if minors are involved.

and in reasonable reliance upon the Commissioner's determination that probable cause existed to issue the warrant. The State is correct in so far as it maintains that the good faith exception validates searches conducted pursuant to warrants properly issued but later determined to be lacking probable cause. *Appellant's Brief* at 9 (citing *Lloyd,* 677 N.E.2d at 76). Still, an officer's reliance on a magistrate's probable-cause determination must be "objectively reasonable." *Hensley,* 778 N.E.2d at 489 (citing *U.S. v. Leon,* 468 U.S. 897, 921, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984)). The mere fact that a magistrate has approved the warrant does not necessarily rescue the evidence from its suppressed and excluded state.

 The exclusionary rule doctrine protects citizens by deterring police misconduct by providing that evidence obtained through an illegal search and seizure is inadmissible at trial. *Newby,* 701 N.E.2d at 602. In *Leon,* the United States Supreme Court adopted the good faith exception to the exclusionary rule, utilizing an objective standard to determine whether evidence is admissible when seized by virtue of a search warrant that was issued by a detached and neutral magistrate but later determined to lack probable cause. *State v. Johnson,* 669 N.E.2d 411, 412 (Ind. Ct.App.1996). The exception, however, does not apply where the warrant is based upon false information knowingly or recklessly supplied by an affiant or if the supporting affidavit is so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. *Id.* Our supreme court has emphasized that "corroboration of inculpating information can sometimes be crucial to determining

the existence of good faith." *Jaggers,* 687 N.E.2d at 185.

The General Assembly has codified the good faith exception in IC 35–37–4–5. *Johnson,* 669 N.E.2d at 412. Subsection (b) of this statute provides that police have obtained evidence in good faith if:

> (1) it is obtained pursuant to:
>
> (A) a search warrant that was properly issued upon a determination of probable cause by a neutral and detached magistrate, that is free from obvious defects other than nondeliberate errors made in its preparation, and that was reasonably believed by the . . . officer to be valid
>
> . . . .

There is nothing in the record to indicate, nor do the parties argue, that the Commissioner was not neutral and detached or that the warrant contained "nondeliberate errors." In addition, it appears that Detective McGlinsey did not knowingly or recklessly supply false information in her affidavit as to the tip and the ensuing police investigation.[9] Indeed, on its face, the probable cause affidavit clearly indicates that the only information obtained by police pertaining to allegations of actual criminal activity were provided by an anonymous informant. The detective even states in her affidavit that Mason was "*possibly* soliciting sex from underage girls" based upon the anonymous tip. *Appellant's Appendix* at 115 (emphasis added). She carefully worded the affidavit to separate the information provided in the tip from the observable facts obtained by police through a subsequent investigation. Yet, although the detective may not have provided false information to the magistrate when she distinguished the allegations made in the anonymous tip from the

9. We need not address defense counsel's argument that Detective McGlinsey allegedly misrepresented her training and experience in her affidavit as we affirm the trial court's decision to exclude the evidence based on lack of probable cause to support the search warrant.

facts gathered by police, the affidavit is defective in that the *only* information pertaining to Mason's alleged illegal activity was provided by the unknown tipster, and, as already noted, the informant's allegations were not corroborated by the police investigation. Thus, there is no objectively reasonable basis for believing that the warrant was valid. *Hensley,* 778 N.E.2d at 489 (citing *Leon,* 468 U.S. at 921, 104 S.Ct. at 3419).

As also noted above, there was no effort by the police to identify the young girl who accompanied Mason from his home or to establish whether the girl was involved in any way with Mason's alleged crimes. Apparently, the investigation into the alleged illegal activity ended when detectives followed Mason as he dropped the girl off and returned to his home. Thus, *"Leon's* rationale is not advanced by effectively allowing the State to claim good faith reliance on a warrant after a less than faithful effort to establish probable cause to obtain it." *Jaggers,* 687 N.E.2d at 186. We conclude, therefore, that the good faith exception does not apply, and the trial court acted correctly to exclude the evidence obtained by the search warrant.

### III. Delay in Filing Warrant and Affidavit

Mason maintains that the trial court's decision should be affirmed based upon other issues other than the lack of probable cause to support the search warrant. While our holding is limited by our determination that the search warrant and affidavit lacked probable cause, we wish to address an important issue raised by the parties here. Mason maintains that the evidence should be excluded due to Detective McGlinsey's failure to timely file the probable cause affidavit as required by IC 35–33–5–2(a), requiring that the affidavit be filed with the judge before a search warrant is issued. Detective McGlinsey,

however, waited twenty-eight (28) days to file the affidavit, citing the delay based upon the supposedly lengthy process of preparing the return and the fact that she went on vacation before the return was completed. The statute, however, requires filing *before* the search is executed and the return has been prepared—not afterward.

The State argues that Detective McGlinsey satisfied the requirements of the statute, relying upon our decision in *Bowles v. State,* 820 N.E.2d 739 (Ind.Ct.App.2005), *trans. denied.* In *Bowles,* we held that a police detective "substantially complied" with the statute although the detective did not file the affidavit with the judge before the warrant was issued. *Id.* at 746. Instead, the detective filed the affidavit the day after the judge signed the warrant and the search was conducted. *Id.* Furthermore, Bowles made no contention that he was prejudiced by the one-day delay in filing the affidavit.

Although we affirmed the trial court's denial of the motion to suppress evidence against Bowles, we plainly stated that we did not condone the detective's one-day delay in filing the affidavit. *Id.* at 745. Rather, we brought attention to "[t]he various law enforcement agencies in Marion County [that] engage in a systemic disregard of the absolute necessity of filing the affidavit before a search warrant issues." *Id.* Here, as in *Bowles,* the officer presented the search warrant and affidavit to a judge "and left with the only copy or copies." *Id.* Yet unlike *Bowles,* Mason complained of hardship or prejudice due to Detective McGlinsey's 28–day delay in filing the affidavit. *Appellee's Brief* at 4–5 (wherein defense counsel relayed firsthand the facts surrounding his difficulty in obtaining copies of the search warrant and affidavit); 19–22 (defense maintains that failure to timely file warrant and affidavit

constitutes actual and per se irreparable harm).

We have no need to determine whether Mason was harmed or prejudiced by this delay because our decision rests upon the lack of probable cause to support the search warrant and the inapplicability of the good faith exception to the exclusionary rule. Still, we cannot ignore the inexcusable delay of 28 days to file the documents with the issuing judge. Additionally, the delay was unnecessary, especially given the clarity the General Assembly employed in the statutory requirement to provide a copy of the search warrant and probable cause affidavit to the judge at the time these documents are presented for approval and signing. Furthermore, in *Thompson v. State*, 190 Ind. 363, 367, 130 N.E. 412, 413 (1921), our supreme court was critical of the procedure Detective McGlinsey employed when she delayed filing the warrant and affidavit. The court declared, "Merely exhibiting an affidavit to the judge, or executing it before him, is not a 'filing' of the affidavit with the judge." Because the affidavit in *Thompson* was filed two weeks after the judge issued the search warrant, the supreme court found that "the warrant was not supported by 'oath or affirmation,' as required by the constitutional provision against unreasonable search and seizure, and was illegal." *Id.* at 368, 130 N.E. at 413.

Affirmed.

BAKER, J., and BARNES, J., concur.