

**FILED**

Jul 29 2016, 8:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Gregory F. Zoeller
Attorney General of Indiana

Eric P. Babbs
Deputy Attorney General
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Patricia Caress McMath
Marion County Public
Defender Agency
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

State of Indiana,

*Appellant-Plaintiff,*

v.

Dejon Pitchford,

*Appellee-Defendant*

July 29, 2016

Court of Appeals Case No.
49A04-1512-CR-2173

Appeal from the Marion Superior
Court

The Honorable John M. Christ,
Commissioner

Trial Court Cause No.
49G14-1505-F6-017468

**Mathias, Judge.**

[1]   The State of Indiana appeals the order of the Marion Superior Court granting a
motion filed by Dejon Pitchford ("Pitchford") to suppress evidence discovered
as a result of a warrantless strip search of Pitchford in jail. The State claims that
the trial court erred in concluding that the search of Pitchford was
impermissible under Article 1, Section 11 of the Indiana Constitution.

We affirm.

## Facts and Procedural History

Both parties agree as to the relevant facts. Pitchford was arrested on a preliminary charge of battery on May 8, 2015. After his arrest, Pitchford was taken to the Marion County Arrestee Processing Center. Marion County Sheriff's Deputy Mark Bunch ("Deputy Bunch") was acting as the "search deputy" that day. Pursuant to department policy, Deputy Bunch conducted a strip search of Pitchford because he had been arrested for battery, which Bunch testified was considered to be a "crime of violence." Tr. pp. 10, 24-25.

The relevant portion of the Sheriff's policy provides:

> 1.  Before a strip search is performed, certain criteria shall be met. Strip searches shall be authorized only under the following circumstances:
>
>> a.  There is reasonable suspicion that the arrestee possesses a weapon, drugs, or contraband.
>>
>> b.  Current charge(s) for escape, possession of drugs, weapons or crimes of violence;
>>
>> c.  Refusal of a pat search;
>>
>> d.  Discovery of weapons, drugs, or contraband during a pat search;
>>
>> e.  Alerted by alarm on the magnetometer;
>>
>> NOTE: If a strip search is indicated due to a walk-through magnetometer alarm during a pat search, the use of a hand-held magnetometer should be used, if available, to determine if surgically implanted metals, etc., caused the alarm prior to initiating a strip search.

> f. Reliable information that the arrestee possesses a weapon, drugs, or contraband;
>
> g. The arrestee is a fugitive or a detain order exists (hold) for any of the above listed offenses; or
>
> h. Contact with the public or exposure to a public area after arrest.
>
> 2. If a pat search has not been completed, a thorough pat search shall be performed while arrestee is still handcuffed and before proceeding to the Search Room where the strip search is to be conducted.
>
> 3. Deputies of the same gender as the person to be searched shall perform strip searches. The Deputy performing a strip search shall not touch the arrestee unless there is an officer safety issue or the arrestee becomes combative.
>
> 4. The Deputy that performs the search shall Sign the OAR as the "Search Deputy."

Ex. Vol., State's Ex. 1., pp. 5-6. Pursuant to the policy, the strip search consisted of an "inspection of the genitalia, buttocks, breast, or undergarments of an arrestee, that is preceded by the removal of, or rearrangement of, some or all of the person's clothing that directly covers the person's genitalia, buttocks, breast, or undergarments." *Id.* at 1.

Deputy Bunch explained the actual process of the strip search as follows:

> A strip search is conducted after an initial pat search is done while the arrestee is still in handcuffs. And then after the arrestee is pat searched, they're walked through a metal detector. And after that, they go back into the strip room where the strip search is proceeded.
>
> Initially, the process would be to remove outer clothing. I usually start with the top, like a shirt.

And then after the clothing is removed, I -- as far as like the shirt, I would have the arrestee turn the article of clothing inside out to make sure that there's nothing on the inside of the clothing. And that's the same process for any additional clothing.

As far as pants, I would go through the pants or shorts, whatever they have on. And then the same process for all those clothings.

The socks would then be removed. The underwear would be removed.

And then after all of that, then I would then begin the rest of the strip search which would include to have the arrestee open their mouth, lift their tongue up, and make sure there's nothing under the tongue, and to lift the top and bottom lips.

And after that, I would then ask them to raise their arms so I could see their armpits.

After that, I then would have him, being a male, lift their testicles up to make sure there's nothing being hidden there.

And then after that, I would have them turn around, face the wall, put their hands on the bar that's inside of that room. It's like a railing. And then with their hands on the bar, I would have them raise one foot at a time to show me that there's nothing on the bottoms of their feet.

And then with their hands still on the railing, I would have them squat down. usually just tell them it's like a baseball catcher, Squat down all the way, where they're bending at the knees. And then they would proceed then to cough three times, usually in a loud manner.

And then after that, I would have them stand up and then keep their legs straight at this point, bend over forward at the waist completely, reach back with both hands and spread their butt cheeks and then cough again three times to make sure that there is nothing in there.

Tr. pp. 12-14.

[6]     Pitchford was compliant with the strip search until the last portion of the search, which required him to bend at the waist and spread his buttocks apart. When Pitchford refused to cooperate with this part of the search, Deputy Bunch called for other deputies to assist him. The deputies then attempted to place Pitchford in handcuffs, but Pitchford resisted. During the process of handcuffing Pitchford, one of the assisting deputies noticed a plastic bag "extruding" from Pitchford's buttocks. Tr. pp. 15-16. Inside the bag was a substance that tested positive as cocaine and heroin.

[7]     As a result, the State charged Pitchford on May 21, 2015, with Level 6 felony possession of cocaine, Level 6 felony possession of a narcotic drug, and Class A misdemeanor resisting law enforcement. Pitchford subsequently filed a motion to suppress the evidence discovered during the strip search, arguing that the deputies had no reasonable suspicion to justify the search of a misdemeanor offender. The trial court held a hearing on this motion on October 13, 2015, and the parties later submitted briefs to the court on this issue. On October 27, 2015, the trial court issued a ruling from the bench granting Pitchford's motion. The State then filed a request that the trial court issue a written order, claiming that it needed a written order in order to appeal.[1] Accordingly, on November 20, 2015, the trial court issued findings of fact and conclusions of law

---

[1] We are unaware of any such requirement. Pitchford makes no argument that the State's appeal is untimely.

explaining its grant of Pitchford's motion to suppress. The State filed its notice of appeal on December 14, 2015, and this appeal ensued.

## Standard of Review

[8] The State argues on appeal that the trial court erred in granting Pitchford's motion to suppress. In cases involving a warrantless search, the State bears the burden of proving an exception to the warrant requirement. *Halsema v. State*, 823 N.E.2d 668, 676 (Ind. 2005). Therefore, on appeal from the trial court's decision to grant a motion to suppress, the State appeals from a negative judgment. *State v. Mason*, 829 N.E.2d 1010, 1015 (Ind. Ct. App. 2005). Thus, the State must show that the trial court's ruling on the suppression motion was contrary to law. *Id*. We will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that reached by the trial court. *Id*. On appeal, we neither reweigh the evidence nor judge the credibility of witnesses. *Id*. Instead, we consider only the evidence most favorable to the trial court's decision. *Id*.

## Discussion and Decision

[9] The State argues that the strip search of Pitchford was constitutional and that the trial court therefore erred in granting Pitchford's motion to suppress. The constitutionality of strip searches in Indiana is controlled by our supreme

court's decision in *Edwards v. State*, 759 N.E.2d 626 (Ind. 2001).[2] In that case, the court held that routine, warrantless strip searches of misdemeanor arrestees, even when incident to a lawful arrest, are not reasonable under Article 1, Section 11 of the Indiana Constitution or the Fourth Amendment to the United States Constitution. *Id*. at 629.

[10] The *Edwards* court suggested that there "may be misdemeanor charges for which a body search is appropriate because of the reasonable likelihood of discovery of evidence." *Id*. at 629. "[B]ut false informing," the crime for which Edwards was arrested, "without more, is certainly not such a crime." *Id*. The court also rejected the suggestion that the possible discovery of weapons or contraband justifies a search of every incarcerated person. *Id*.

[11] The *Edwards* court ultimately held that a strip search is appropriate if the officer conducting the search has "a reasonable suspicion, based upon the totality of the circumstances surrounding [the defendant's] arrest, that [the defendant] was concealing weapons or contraband." *Id*. at 630. In *Edwards*, the record was unclear as to whether the defendant had been subjected to a routine strip search or if the officer had a reasonable suspicion that Edwards was concealing weapons or contraband. Therefore, the court held that the trial court did not err

---

[2] Because *Edwards* is controlling, we reject the State's argument that we should analyze Pitchford's claims under the three-factor test set forth in *Litchfield v. State*, 824 N.E.2d 356 (Ind. 2005).

in concluding that the State had not met its burden of demonstrating that the warrantless search was justifiable. *Id*.

[12] The State argues that the holding in *Edwards* has been abrogated by the United States Supreme Court's more recent decision in *Florence v. Board of Chosen Freeholders of Burlington County*, 132 S. Ct. 1510 (2012). The Court in *Florence* held that the Fourth Amendment does not prohibit strip searches of arrested persons before they enter a jail's general population. *Id*. at 1523. The *Florence* majority rejected the contention that persons arrested for minor offenses must be excluded from such strip searches. 132 S. Ct. at 1520-21.

[13] However, the holding of our supreme court in *Edwards* was based on *both* the Indiana Constitution *and* federal Constitution. *See Edwards*, 759 N.E.2d at 630 (assuming that case decided by Seventh Circuit Court of Appeals was correctly decided under the Fourth Amendment, but reaching the same conclusion under Article 1, section 11 of the Indiana Constitution). Accordingly, even if the strip search of Pitchford was permissible under the Fourth Amendment,[3] it must still pass muster under the distinct, and arguably stricter, requirements of Article 1, Section 11 of the Indiana Constitution. *See Litchfield v. State*, 824 N.E.2d 356, 361 (Ind. 2005) (holding that warrantless search of trash, which is permissible

---

[3] The constitutionality of the strip search under the Fourth Amendment would depend on whether Pitchford was to be held outside the general population. *See Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth*., 771 F.3d 201, 208 (4th Cir. 2014) ("strip searching pre-arraignment detainees who are held outside the general population of a detention facility is unconstitutional absent reasonable suspicion.") (Wynn, J., concurring) (citing *Florence*, 132 S.Ct. at 1523 (Roberts, C.J., concurring); *id*. at 1524 (Alito, J., concurring); *id*. at 1525 (Breyer, J., joined by Ginsburg, Sotomayor, and Kagan, JJ., dissenting)).

under the Fourth Amendment, requires a reasonable suspicion under the Article 1, Section 11); *Clanton v. State*, 977 N.E.2d 1018, 1023 (Ind. Ct. App. 2012) (noting that despite the nearly identical language of the Fourth Amendment and Article 1, Section 11, the very same police behavior could be reasonable under the federal constitution and unreasonable under the state constitution because each has a distinct reasonableness analysis).

[14] Thus, the holding in *Edwards* is still controlling to the extent that it was based on Article 1, Section 11. Under *Edwards,* the warrantless strip search of misdemeanor arrestees is impermissible unless, given the totality of the circumstances, the officer has a reasonable suspicion that the arrestee is secreting weapons or contraband. Nothing in the record indicates that Deputy Bunch conducted the strip search based on any reasonable suspicion. It was instead the very sort of routine, warrantless search prohibited by *Edwards*.

[15] The State attempts to distinguish this case from *Edwards* by focusing on the fact that Pitchford was arrested for battery, which it claims is a crime of violence. The State argues that *Edwards* would permit a strip search of an individual arrested for a violent misdemeanor. Our reading of *Edwards*, however, reveals no general exception for crimes of violence. Instead, the court in *Edwards* merely noted that the possible charges faced by the defendant in that case were all nonviolent misdemeanor offenses. 759 N.E.2d at 629. The court did not hold that it was therefore permissible to routinely strip search those arrested for violent misdemeanors. To the contrary, the court clearly held that strip searches of misdemeanor arrestees must be based on a reasonable suspicion that the

arrestee is concealing weapons or contraband. *Edwards*, 759 N.E.2d at 631.
Therefore, if an individual were arrested for a violent misdemeanor that
involved drugs or the use of a weapon, then this might, under the proper
circumstances, support a reasonable suspicion that the arrestee is concealing
contraband or weapons. *See id.* (noting that there "may be misdemeanor
charges for which a body search is appropriate because of the reasonable
likelihood of discovery of evidence). However, Pitchford's offense is not this
sort of misdemeanor charge, as nothing in the record indicates that Pitchford's
battery involved any sort of weapon or the possession of any contraband.

[16]    The other cases in which this court has upheld a strip search are readily
distinguishable. In *Bryant v. State*, 959 N.E.2d 315, 320 (Ind. Ct. App. 2011),
this court held that the defendant, who was arrested for misdemeanor resisting
law enforcement, might have a strong argument that a warrantless strip search
was impermissible without other justification. However, the police in *Bryant* did
have such justification because they also had probable cause that the defendant
had committed the felony of dealing in a narcotic drug and reasonable
suspicion that he was concealing contraband. *Id.*

[17]    In *White v. State*, 24 N.E.3d 535, 540-41 (Ind. Ct. App. 2015), *trans. denied*, we
held that the strip search of a defendant arrested for a misdemeanor was
permissible under the Fourth Amendment[4] because of the officer's reasonable

---

[4] The court in *White* made no reference to *Florence*. Although the holding in *White* was based upon the Fourth Amendment, we find its holding instructive in our analysis under Article 1, Section 11.

suspicion that contraband might be introduced into the jail due to the lingering odor of marijuana which engulfed the defendant even after he had been transported to the arrestee processing center).

[18] In *Frye v. State*, 757 N.E.2d 684, 688-89 (Ind. Ct. App. 2001), *trans. denied*, we held that, under the Fourth Amendment,[5] a strip search was not justified merely by the defendant's arrest for fleeing the police but was justified because some evidence gave rise to a reasonable suspicion that the defendant was in possession of contraband, i.e., the presence of illicit drugs and paraphernalia in plain view in the house from which the defendant fled. *Id. See also Thompson v. State*, 824 N.E.2d 1265, 1268 (Ind. Ct. App. 2005) (holding that strip search of defendant arrested for *felony* attempt to deal in cocaine was reasonable but that the search being filmed by civilian camerawoman rendered the search unreasonable).

[19] The bottom line is that *Edwards* is controlling, and we are not at liberty to ignore it. Even though the *Edwards* court's reliance on the Fourth Amendment has been undermined by the United States Supreme Court's holding in *Florence*, its holding still stands for purposes of Article 1, Section 11. The clear holding in *Edwards* requires that a warrantless strip search of a misdemeanor arrestee be justified by reasonable suspicion, based on the totality of the circumstances, that the arrestee is concealing weapons or contraband. No such suspicion was

---

[5] To the extent that *Frye* was based upon the Fourth Amendment, it would appear to have been abrogated by *Florence*. However, we still find it supportive of our analysis under Article 1, Section 11.

reported in the present case, nor do we read *Edwards* as permitting the warrantless strip search of all defendants arrested for violent offenses. Here, Pitchford was arrested for misdemeanor battery, and nothing about the circumstances surrounding his offense or his arrest support a reasonable suspicion that he was concealing weapons or contraband. In short, the State has not established that the trial court's decision was contrary to law.[6] The order of the trial court granting Pitchford's motion to suppress the evidence discovered during the strip search is therefore affirmed.

[20] Affirmed.

Vaidik, C.J., and Barnes, J., concur.

---

[6] We note that the good faith exception to the exclusionary rule does not apply to cases involving warrantless searches. *See Thompson*, 824 N.E.2d at 1271.