Larry D. BEST, Jr., Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 38A05–0403–CR–143.

Court of Appeals of Indiana.

Nov. 18, 2004.

---

Kimberly A. Jackson, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Monika Prekopa Talbot, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

CRONE, Judge.

### Case Summary

Appellant-defendant Larry D. Best, Jr. appeals the trial court's denial of his motion to suppress. We reverse.

### Issue

Best presents one issue for review, which we restate as whether the trial court erred in denying his motion to suppress.

### Facts and Procedural History

On June 26, 2001, Jennings County issued a warrant for Best for failure to appear at a hearing on a misdemeanor charge of furnishing alcohol to minors. On August 24, 2001, Best was arrested in Jay County on a Blackford County warrant for driving while suspended and transferred to the Jay County Security Center. He was detained pursuant to an Adams County warrant and the Jennings County warrant. On August 27, 2001, Best was released on bond and transferred to Adams County, where he answered the charges against him. Jennings County chose not to take any action on Best's outstanding arrest warrant, and on August 29, 2001, he was released from the Adams County jail.

On August 30, 2001, Best was arrested in Jay County on a Blackford County warrant for failure to appear and transferred to the Jay County Security Center. He was detained on the same Jennings County warrant. The Security Center personnel again contacted Jennings County regarding Best's outstanding warrant. Jennings County chose not to take any action on the warrant, and Best was released the next day.

On October 7, 2001, Portland Police Officer Judson Wickey arrested Best in Jay County for driving under the influence and resisting law enforcement. Best was

transferred to the Jay County Security Center. After Best was in custody, Officer Wickey conducted a warrant check, and the computer system still showed that Best had an outstanding warrant from Jennings County. Thereafter, Officer Wickey read the warrant to Best. Tr. at 115. Best was detained on the same Jennings County warrant, and the Security Center personnel contacted Jennings County. Again Jennings County chose not to take any action on the warrant, and Best was released.

On November 12, 2001, Best was involved in an accident with another driver in Jay County. After gathering the relevant accident information, Portland Police Officer Mark Barnett released the drivers. Afterwards, Officer Barnett discovered that Best had an outstanding warrant from Jennings County. Later in the day, Officer Barnett saw Best, detained him, and served him with the Jennings County warrant, the same warrant under which he had been detained on three prior occasions. After arresting Best, Officer Barnett discovered and seized a handgun from him. Thereafter, Best was transferred to the Jay County Security Center and detained pursuant to the Jennings County warrant.

On November 15, 2001, the State charged Best with carrying a handgun without a license,[1] a class C felony. On January 21, 2004, Best filed a motion to suppress. On January 26, 2004, after a hearing, the trial court denied his motion. Best now appeals.

### Discussion and Decision

■ Best contends that the trial court erred in denying his motion to suppress the handgun. Our standard of review is well settled.

We review the denial of a motion to suppress in a manner similar to other sufficiency matters. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. However, unlike the typical sufficiency of the evidence case where only the evidence favorable to the judgment is considered, we must also consider the uncontested evidence favorable to the defendant.

*Overstreet v. State,* 724 N.E.2d 661, 663 (Ind.Ct.App.2000) (citations omitted), *trans. denied.*

■ Best contends that the Jennings County arrest warrant was defective because he had been detained on the same warrant on three prior occasions. He argues that his arrest violated his rights under Article I, Section 11 of the Indiana Constitution and the Fourth Amendment. Article I, Section 11 of the Indiana Constitution, which is substantially similar to the Fourth Amendment to the Constitution of the United States, provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure, shall not be violated." Under both Article I and the Fourth Amendment, an unlawful arrest cannot be the foundation of a lawful search. *Hammond v. State,* 675 N.E.2d 353, 355 (Ind.Ct.App.1996). Evidence which is the product of an illegal detention or an unlawful arrest is inadmissible. *Id.*

Indiana Code Section 35–33–1–1 provides that a law enforcement officer may arrest a person when the officer has a warrant commanding that the person be arrested. The Code further provides that "the accused shall be delivered to the sheriff of the county in which the indictment or information was filed, and the sheriff shall commit the accused person to jail or hold

---

1. Ind.Code § 35–47–2–1.

him to bail as provided in this article." Ind.Code § 35–33–2–3. When an information or indictment has been dismissed, the court is required to order the sheriff to make a return on any outstanding warrant or summons issued stating that the charge has been dismissed. Ind. § Code 35–33–2–5. The sheriff must then notify any law enforcement officer to whom the arrest warrant or summons has been delivered that it has been revoked. *Id.*

Best contends that the Jennings County warrant was invalid when the police arrested him on November 12, 2001. The validity of an arrest warrant under which a defendant has been previously detained is an issue of first impression in Indiana. A number of other jurisdictions have dealt with the issue of arrest and search based on a satisfied or an otherwise invalid warrant. In *United States v. Mackey,* 387 F.Supp. 1121 (D.Nev.1975), police arrested Mackey in reliance upon a National Crime Information Center ("NCIC") check showing an outstanding arrest warrant for probation violation. The warrant had been satisfied five months earlier. After booking Mackey, police discovered and seized a shotgun in his possession. Mackey filed a motion to suppress contending that his arrest was illegal because the NCIC information was inaccurate and had been inaccurate for five months. In granting Mackey's motion, the court assessed the consequences of the NCIC error to Mackey:

> Because of the inaccurate listing in the NCIC computer, defendant was a "marked man" for the five months prior to his arrest, and, had this particular identification check not occurred, he would have continued in this status into the indefinite future. At any time, as demonstrated by this situation, a routine check by the police could well result in defendant's arrest, booking, search, and detention. Further, there is no evidence

to suggest that defendant would not continue to be subject to such humiliation until Monterrey police officials cleared the computer of the warrant. Defendant was subject to being deprived of his liberty at any time without any legal basis.

> . . . .

> [A] computer inaccuracy of this nature and duration, even if unintended, amounted to a capricious disregard for the rights of the defendant as a citizen of the United States. The evidence compels a finding that the government's action was equivalent to an arbitrary arrest, and that an arrest on this basis deprived defendant of his liberty without due process of law. Once this warrant was satisfied, five months before defendant's arrest, there no longer existed any basis for his detention, and the Government may not now profit by its own lack of responsibility.

*Id.* at 1124–25.

We find the analysis of *State v. White,* 660 So.2d 664 (Fla.1995) likewise instructive. The police stopped White for driving with a defective taillight, conducted a warrant check, and discovered that he had an outstanding arrest warrant. The police arrested White, conducted a search incident to arrest, and discovered contraband. White was transported to jail, and the police discovered that the warrant had been satisfied four days earlier. White filed a motion to suppress the contraband, which was granted. In considering whether the arrest was valid, the court explained:

> A police officer has knowledge, or may be properly charged with knowledge, of an unconstitutional search under what is commonly called the "fellow officer" or "collective knowledge" rule. The rule generally works to the officer's advan-

tage by providing that when making an arrest, an officer may rely upon information supplied by fellow officers. However, if the information fails to support a legal arrest, evidence seized as a result of the arrest cannot be insulated from challenge on the grounds that the instigating officer relied on information furnished by fellow officers. The rule does not function solely permissively, to validate conduct otherwise unwarranted; the rule also operates prohibitively, by imposing on law enforcement the responsibility to disseminate only accurate information.

. . . .

It is repugnant to the principles of a free society that a person should ever be taken into police custody because of a computer error precipitated by government carelessness.

*Id.* at 667 (citations and quotation marks omitted).

 Here, Best, like the defendant in *Mackey*, was a "marked man." He was detained on the Jennings County warrant for failure to appear on three occasions [2] prior to his arrest on the warrant on November 12, 2001. The record reflects that on each occasion Jennings County was notified of Best's "hold" pursuant to the warrant and that each time Jennings County chose not to take any action on the warrant and Best was released. Jay County Security Center employee Jim Ward testified that when an individual is detained pursuant to an arrest warrant from another county, jail employees are required to contact that county for disposition instructions. Tr. at 83. The individual is released from custody only if the county that issued the warrant indicates that it does not wish to pursue the charge. *Id.* at 86. Additionally, Officer Wickey testified that he arrested Best on October 7, 2001, and read the outstanding Jennings County warrant to him. *Id.* at 115.

Jennings County's decision not to take Best into custody, or to dismiss the warrant against him, subjected Best to deprivation of his liberty on four occasions.[3] Enough is enough. We conclude that Best was served with the Jennings County warrant when he was first detained pursuant to it. At that time, the Jennings County warrant was satisfied and therefore lost its validity as a proper basis for future arrests. As Judge Staton explained in his dissent in *Buck v. P.J. T.*, 182 Ind.App. 71, 75, 394 N.E.2d 935, 938 (1979), "[w]hen the warrant lacks legal purpose, its existence serves only as an impermissible barrier to due process." We are not holding that every seizure, based on an arrest prompted by a computer mistake, warrants suppression of evidence, but the facts here clearly constitute an egregious violation of due process. Consequently, we hold that the trial court erred in refusing to grant Best's motion to suppress. *See Gibson v. State*, 733 N.E.2d 945, 953 (Ind.Ct.App. 2000) (noting that an unlawful arrest cannot be the foundation of a lawful search and that evidence which is the product of an illegal arrest is inadmissible).

Reversed.

RILEY, J., and VAIDIK, J., concur.

---

2. Best was detained on the Jennings County warrant in Jay County on August 24, 2001, August 30, 2001, and October 7, 2001.

3. Best was detained on the Jennings County warrant in Jay County on three separate occasions within a three-month period, and he was arrested in Jay County and searched pursuant to it on November 12, 2001.