STATE of Indiana, Appellant–Plaintiff,

v.

John MORIARITY, Appellee–
Defendant.

No. 27A02–0503–CR–182.

Court of Appeals of Indiana.

Aug. 10, 2005.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, for Appellant.

## OPINION

CRONE, Judge.

### Case Summary

The State appeals the trial court's granting of the motion to suppress filed by John Moriarity ("John"). We reverse and remand.

### Issue

The State raises one issue, which is whether the trial court erred by granting John's motion to suppress.

### Facts and Procedural History

John and his wife Becky own CARE Auto Auction in Gas City, Indiana. At CARE, the Moriaritys primarily auction vehicles owned by others. They also auction used vehicles they have purchased, after cleaning and repairing them. In April 2003, the Moriaritys purchased a white 1998 Oldsmobile from a Ford dealership. They prepared the car for auction and awaited receipt of the title from the dealership.[1] In July 2003, the dealership closed, and the Moriaritys received notice that Bank One had a lien on the Oldsmobile. The Moriaritys then filed a mechanic's lien on the car for their time and expense in cleaning and repair work. On September 30, 2003, the Moriaritys filed an application for certificate of title with the Bureau of Motor Vehicles. On October 3, 2003, the Moriaritys received notice of a lawsuit filed against them by Bank One. Sometime after October 18, 2003, the Moriaritys received the title to the Oldsmobile.[2]

On October 23, 2003, Grant County Sheriff's Deputy Nathan Herring arrived at the Moriaritys' car lot and showed John a prejudgment order of possession. The document, signed by a Grant County judge, ordered the Grant County Sheriff to "seize and take into custody" the Oldsmobile and to deliver it to Bank One. Appellant's App. at 106. Deputy Herring and John confirmed that the vehicle identification number on the order matched that of the Oldsmobile in John's possession.

---

1. Becky testified that they usually receive a vehicle's title approximately two to three weeks after the purchase date.

2. The title shows an issue date of October 18, 2003. On October 23, 2003, John told Deputy Herring that he had the title. However, Becky testified at trial that they received the title on October 27, 2003.

John told Deputy Herring, "I have the title, the vehicle's not going anywhere." Tr. at 56. Deputy Herring explained that the court order required him to seize the vehicle, and he instructed John to consult an attorney and seek a determination of ownership through the "Court process." *Id.* John got inside the Oldsmobile and locked the door. Deputy Herring ordered John to exit the vehicle. John started the engine, pulled away, and drove onto a county road. Deputy Herring pursued John in his patrol car. John turned into a bean field and led Deputy Herring on a chase that reached a speed of approximately seventy miles per hour on a "very dusty, dirty, bumpy trail." *Id.* at 51. John continued to flee even after Deputy Herring activated his patrol car's lights and siren. Eventually, John came to a stop and was placed under arrest.

On October 27, 2004, the State charged John with resisting law enforcement as a class D felony. The charging information stated that he "did ... unlawfully knowingly flee from Nathan Herring, a law enforcement officer with the Grant County Sheriff's Department, after said officer identified himself by audible or visible means and visibly or audibly ordered said defendant to stop." Appellant's App. at 9. On November 24, 2004, the Grant Circuit Court rescinded the prejudgment order of possession and ordered the Oldsmobile returned to the Moriaritys. On December 13, 2004, John filed a motion to suppress, claiming that because the prejudgment order of possession was later determined to be invalid, the seizure of his vehicle violated his due process rights. He requested that the trial court suppress all evidence and testimony relating to the events that occurred "after Deputy Herring presented [John] with the fact that he was going to seize the [Oldsmobile]." The trial court granted his motion following a hearing on December 15, 2004, stating, in pertinent part,

> On [October 23, 2004], it's clear that the Moriarity's [sic] had title of possession to the vehicle. And since that time, also there have been further Court hearings in which the evidence is clear and there has been no evidence to suggest otherwise, that Pre–Judgment Order was rescinded and uh, not only was possession not given, but since that time has been ordered the proper owners are the Moriarity's [sic] and they since have had possession given to them of that vehicle. Based upon all of this, I do believe that the defendant's due process rights have been violated not on the day in question of well, they were subsequently because of this, but even prior to October 23rd of 2003, the defendant's due process rights were violated in a civil matter under the first and foremost rights of the Constitution both the United States Constitution, Indiana Constitution for parties to feel secure in their property and persons without being unlawfully seized. It is this Court's opinion that the Pre–Judgment Order should not have been signed. This Court also would not have signed such an Order without notice and without hearing. Based upon that, it was an invalid Order since it has become an invalid Order and although the officer had in his possession what he believed to be a facially valid order, um, on October 23rd, when he served it. Because it is not, it then leaves everything thereafter invalid and should be suppressed. The Court is going to grant the Motion to Suppress.

Tr. at 90–91. The State now appeals.

### Discussion and Decision

■■■ The State argues that the trial court erred in granting John's motion to suppress. Generally, we review a trial court's decision to grant a motion to sup-

press as a matter of sufficiency. *State v. Belcher*, 725 N.E.2d 92, 93 (Ind.Ct.App. 2000). When conducting such a review, we will not reweigh evidence nor judge witness credibility. *Id.* We note, however, that Moriarity failed to file an appellee's brief. Under such circumstances, a less stringent standard of review applies, and the State need only establish prima facie error, which is error at first sight or on the face of it. *Parker v. State*, 822 N.E.2d 285, 286 (Ind.Ct.App.2005). This rule is not intended to benefit the appellant, but rather to relieve this Court of the burden of developing arguments on behalf of the appellee. *See id.*

 The State argues that the trial court's rescission of the prejudgment order of possession is irrelevant to John's motion to suppress. Even if the order was improper, the State contends, John had no right to flee from Deputy Herring. We agree. At one time, this Court recognized the common law right of a person to resist an unlawful arrest. *See Williams v. State*, 160 Ind.App. 294, 298, 311 N.E.2d 619, 621 (1974). However, we clearly rejected the common law rule in *Fields v. State*, 178 Ind.App. 350, 355, 382 N.E.2d 972, 975 (1978):

> We are of the opinion that the common law rule is outmoded in our modern society. A citizen, today, can seek his remedy for a policeman's unwarranted and illegal intrusion into the citizen's private affairs by bringing a civil action in the courts against the police officer and the governmental unit which the officer represents. The common law right of forceful resistance to an unlawful arrest tends to promote violence and increases the chances of someone getting injured or killed.

In *Fields,* we adopted the reasoning of the Alaska Supreme Court, which stated,

> We feel that the legality of a peaceful arrest should be determined by courts of law and not through a trial by battle in the streets. It is not too much to ask that one believing himself unlawfully arrested should submit to the officer and thereafter seek his legal remedies in court. Such a rule helps to relieve the threat of physical harm to officers who in good faith but mistakenly perform an arrest, as well as to minimize harm to innocent bystanders. The old common law rule has little utility to recommend it under our conditions of life today. We hold that a private citizen may not use force to resist peaceful arrest by one he knows or has good reason to believe is an authorized peace officer performing his duties, regardless of whether the arrest is illegal in the circumstances of the occasion.

*Id.* at 356–57, 382 N.E.2d. at 976 (quoting *Miller v. State*, 462 P.2d 421, 427 (Alaska 1969)). We have reiterated this modern rule in many cases since *Fields*, most recently in *Robinson v. State*, 814 N.E.2d 704 (Ind.Ct.App.2004). In *Robinson*, we stated that "the Indiana rule is that a private citizen may not use force in resisting a peaceful arrest by an individual [whom] he knows, or has reason to know, is a police officer performing his duties regardless of whether the arrest in question is lawful or unlawful." *Id.* at 708 (citation omitted).

The instant case is a perfect example of why we believe that the modern rule on resisting arrest is necessary, and why it should also apply to resisting a peaceful seizure of property by police. John's questions regarding ownership of the Oldsmobile and the validity of the seizure order were issues appropriate for determination by a court of law. When John told Deputy Herring that he had the vehicle's title in his possession, Deputy Herring explained that he was required to follow the court's

order by seizing the vehicle and that the Moriaritys would have to avail themselves of the legal system to reclaim the vehicle. Believing that his property was being unlawfully seized, John fled from law enforcement and initiated a dangerous high-speed chase that could have resulted in injuries or death to himself, Deputy Herring, and/or innocent bystanders. This is the very type of risk that the modern rule seeks to prevent.[3]

In sum, the State has made a prima facie showing that the trial court erred by granting John's motion to suppress. We reverse and remand for further proceedings consistent with this opinion.

Reversed and remanded.

DARDEN, J., and MATHIAS, J., concur.

---

**3.** In its ruling on John's motion to suppress, the trial court relied upon this author's decision in *Best v. State,* 817 N.E.2d 685 (Ind.Ct. App.2004). In *Best,* the defendant was detained four separate times pursuant to the same arrest warrant. On the first three occasions, the county chose not to take action on the warrant and released Best, but the warrant remained active in the county's computer system. Best was then involved in a car accident, and, once again, police discovered the same outstanding warrant. After arresting Best, they found a handgun on his person and seized it. The State charged him with carrying a handgun without a license. Best filed a motion to suppress, which the trial court denied. We reversed, finding that the warrant had been served and satisfied—and

was thus invalid as a proper basis for future arrests—when the county decided to release the defendant following the first detention. We found that the repeated detention of the defendant on an invalid warrant constituted an "egregious violation of due process" and that the evidence seized after his unlawful arrest was inadmissible. *Id.* at 689. We agree with the State that the trial court's reliance on *Best* was misplaced here. *Best* addressed the issue of the admissibility of evidence that is the product of an illegal arrest, whereas this case involves an individual's right to resist a seizure of property that he believes to be unlawful. These are two very different issues, and therefore, our holding in *Best* does not apply to this case.