STATE of Indiana, Appellant–Plaintiff,

v.

Quentin FRIDY, Appellee–Defendant.

No. 65A01–0509–CR–418.

Court of Appeals of Indiana.

Feb. 20, 2006.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

## OPINION

KIRSCH, Chief Judge.

Quentin Fridy was charged with possession of marijuana[1] as a Class D felony. Fridy filed a motion to suppress the evidence obtained pursuant to a search war-

---

1. *See* IC 35–48–4–11(1).

rant. The trial court granted the motion, and the State appeals.[2]

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

On August 17, 2004, Officer Dan Hoehn, of the Evansville Police Department Narcotics Unit, responded to a complaint from a local hotel that the odor of marijuana was emanating from one of the rooms. At the scene, two subjects gave Officer Hoehn consent to search their room. During the search, Officer Hoehn found one-half-pound of marijuana.

The two subjects stated that they were holding the marijuana for Fridy, their supplier, "on a front," and volunteered to cooperate with the police and to obtain additional marijuana from Fridy. *Tr.*, 5–17–05, at 9.[3] The police provided no incentive for the subjects (hereinafter, "informants") to cooperate. *Id.* at 4–5.

In the presence of the police, the informants placed a phone call to arrange a meeting with Fridy. *State's Ex.* 1 at 2. Prior to the meeting, the police searched the informants and their vehicle. An Evansville Police Detective followed the informants to Fridy's residence and kept in constant visual contact. One of the informants entered the residence and returned to the vehicle with Fridy. Thereafter, Fridy entered the back seat, the informants entered the front seat, and the three drove away. Detective Townsend, another Evansville Police Detective, followed the vehicle and executed a traffic stop. During the stop, Detective Townsend saw Fridy place something under the driver's seat. Police obtained the driver's consent to search the vehicle and found a green, leafy substance weighing approximately five ounces under the driver's seat. The substance field-tested positive for marijuana.

During the investigation, the police learned from Fridy's landlord that Fridy rented the residence where the informants picked him up. The police further learned that the landlord saw Fridy leave with the two informants, which confirmed the officers' observations.

Officer Hoehn filed with the trial court an affidavit of probable cause in which he described the events leading up to the arrest. Based on this affidavit the trial court issued a warrant on August 17, 2004, to search Fridy's residence for marijuana, methamphetamine, and items associated with the dealing of controlled substances. *State's Ex.* 1 at 1. The search of Fridy's residence revealed more than 160 grams of marijuana and a loaded pistol.[4] *Appellant's App.* at 9.

On September 7, 2004, the State charged Fridy with Class D felony possession of marijuana. On March 9, 2005, Fridy filed a motion to suppress evidence seized pursuant to the search arguing that the search violated Fridy's rights under the Fourth Amendment of the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Fridy argued that there was no probable cause to search his residence because the warrant

2. IC 35–38–4–2(5) provides that appeals may be taken "[f]rom an order granting a motion to suppress evidence, if the ultimate effect of the order is to preclude further prosecution."

3. The separate transcripts of the various hearings held in connection with Fridy's various motions are not numbered. Instead, each transcript bears the date of the hearing.

Therefore, we refer to each transcript by its date.

4. Because no methamphetamine was found in Fridy's residence, we do not address the issue of whether there was sufficient evidence of probable cause to search Fridy's residence for methamphetamines or items associated with the dealing of methamphetamines.

was based primarily on the hearsay statements of the two unnamed informants.

On April 29, 2005, prior to the trial court's ruling on the motion to suppress, Fridy filed a motion to compel disclosure of the informants' names and addresses. The motion stated "[t]hat the Affidavit supporting the Search Warrant sets out hearsay statements of confidential informant's [sic] and claims that the confidential informants' statements are reliable because they were made against penal interest." *Appellant's App.* at 24. In his motion, Fridy argued that the reliability of the informants' hearsay statements could not be confirmed without knowing their identities and in what way their statements were against their penal interests. After a hearing, the trial court granted Fridy's motion to compel disclosure of the names and addresses of the confidential informants, which the State refused to do. Two weeks later, on July 12, 2005, the State filed a Request for Ruling on Motion to Suppress without the disclosure of confidential informants. The trial court held a hearing and, on July 19, 2005, granted Fridy's motion to suppress the evidence found in his residence. *Appellant's App.* at 31. Because the suppression of the evidence effectively precludes the State's further prosecution of Fridy, the State now appeals.

## DISCUSSION AND DECISION

▆ Initially, we note that Fridy failed to file an appellee's brief. Under such circumstances, a less stringent standard of review applies, and the State need only establish *prima facie* error, which is error at first sight or on the face of it. *State v. Moriarity,* 832 N.E.2d 555, 558 (Ind.Ct. App.2005); *Parker v. State,* 822 N.E.2d 285, 286 (Ind.Ct.App.2005). This rule is not intended to benefit the appellant, but rather to relieve this Court of the burden of developing arguments on behalf of the appellee. *See Moriarity,* 832 N.E.2d at 558; *Parker,* 822 N.E.2d at 286.

The State claims that the suppression of all evidence was an inappropriately broad remedy for the State's failure to disclose the identity of the informants. In essence, the State argues that if the trial court had omitted all evidence that was solely attributable to the informants' statements, sufficient evidence of probable cause still existed to grant the search warrant. As such, the State argues that the trial court erred in granting Fridy's motion to suppress the evidence obtained pursuant to the warrant. We agree.

▆ The trial court's ruling provided:
The Defendant, having requested disclosure of identity of confidential informants, and the Court, having granted said motion, and the State of Indiana, having requested ruling on the Motion to Suppress without the disclosure of confidential informants, the Court now takes the Motion to Suppress out from under advisement and grants said Motion to Suppress.

*Appellant's App.* at 31. Generally, we review a trial court's decision to grant a motion to suppress as a matter of sufficiency. *Moriarity,* 832 N.E.2d at 557–58; *State v. Belcher,* 725 N.E.2d 92, 93 (Ind.Ct. App.2000), *trans. denied.* When conducting such a review, we will not reweigh evidence or judge witness credibility. *Moriarity,* 832 N.E.2d at 558. Here, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *State v. Estep,* 753 N.E.2d 22, 24–25 (Ind.Ct.App.2001). This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* at 25.

The trial court's stated reason for granting Fridy's motion to suppress was the State's noncompliance with the trial court's order requiring it to reveal the informants' identities. As such, we address both the question of whether there was probable cause to support the warrant and whether the trial court erred in granting Fridy's motion to suppress as a sanction for the State's noncompliance.

■■■ The Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require a search warrant to be supported by probable cause. *State v. Mason*, 829 N.E.2d 1010, 1015–16 (Ind.Ct.App.2005). We accord significant deference to a trial court's probable cause determination, but we review a trial court's ruling on a motion to suppress evidence de novo. *Id.* at 1016; *Methene v. State*, 720 N.E.2d 384, 388 (Ind.Ct.App.1999); *Hensley v. State*, 778 N.E.2d 484, 487 (Ind.Ct.App.2002). On review, we determine whether the trial court had a "substantial basis" for concluding that probable cause to support the search warrant existed. *Query v. State*, 745 N.E.2d 769, 771 (Ind.2001).

■■■ "[U]ncorroborated hearsay from a source whose credibility is itself unknown, standing alone, cannot support a finding of probable cause to issue a search warrant." *Jaggers v. State*, 687 N.E.2d 180, 182 (Ind. 1997) (citing *Illinois v. Gates*, 462 U.S. 213, 227, 232, 103 S.Ct. 2317, 2326, 2329, 76 L.Ed.2d 527 (1983)). IC 35–33–5–2(b) provides that when an affidavit is based on hearsay, the affidavit must either contain reliable information establishing the credibility of the source and of each of the declarants of the hearsay *or* contain information that establishes that the totality of the circumstances corroborates the hearsay. *See Houser v. State*, 678 N.E.2d 95, 100 (Ind.1997). Either is sufficient under the statute.

■■■ Declarations against penal interest can furnish sufficient basis for establishing the credibility of an informant within the meaning of IC 35–33–5–2(b)(1). *Houser*, 678 N.E.2d at 100 (citing *Nash v. State*, 433 N.E.2d 807, 809–10 (Ind.Ct.App. 1982) (construing predecessor statute)); *Creekmore v. State*, 800 N.E.2d 230, 234 (Ind.Ct.App.2003). The probable cause affidavit in this case provided:

The statements of the two individuals from the hotel room are reliable because they are based on personal knowledge and *made against their penal interests*. Information obtained from them regarding the residence, its occupant and the presence of marijuana were confirmed through the controlled delivery, statements by the landlord, and observations of law enforcement. The two individuals are known to EPD by name, Date of Birth and other identifiers.

*State's Ex.* 1 at 3 (emphasis added).

Focusing only on the italicized language, Fridy's motion to compel the disclosure of the informants' identities argued that in order for the defense to determine whether the hearsay declarants are credible, the State must show how their statements are against their penal interests. Fridy, however, failed to consider that this information was only necessary if the hearsay statements were not otherwise corroborated by independent police investigation. *See Jaggers*, 687 N.E.2d at 182 (citing *Gates*, 462 U.S. at 227, 103 S.Ct. at 2326).

Indiana courts have discussed the types of corroborating information needed to overcome the hearsay hurdle. For example, in *Jaggers*, police investigation revealed information that corroborated the informant's allegations that marijuana was being grown on two plots of land miles from Jaggers's residence and that Jaggers appeared to live where the informant said

he lived. *Jaggers*, 687 N.E.2d at 182. Our Supreme Court determined that the search warrant lacked a substantial basis to establish probable cause because police had not corroborated the critical claim, i.e., that Jaggers was cultivating and trafficking marijuana in his house and also controlled the off-site plots. *Id.*

In *Mason*, the defendant was charged with promoting child prostitution. Following up on a tip from Crime Stoppers of Central Indiana ("Crime Stoppers"), the police confirmed that Mason was a white male, 50 years old, who lived at the reported address, and drove a pickup truck matching the Crime Stoppers' description. The police followed Mason, watched him drop off a girl at a nearby neighborhood, and continued to follow him home. A search warrant was issued on these facts, and the search of the residence produced sufficient evidence to charge Mason with child exploitation, promoting prostitution, and possession of marijuana. Mason filed a motion to suppress arguing that the affidavit lacked probable cause, and the trial court agreed. On appeal, our Court affirmed, noting that although the police corroborated most of the informant's allegations that a white male lived at a certain address and drove a certain truck, they failed to corroborate the critical claim "that Mason was involved in criminal activity, i.e., that he was paying young girls . . . to have sex with him." *Mason*, 829 N.E.2d at 1017.

Here, the police provided sufficient corroboration to overcome the hearsay hurdle and establish probable cause to issue the search warrant. Acting on the informants' statements that Fridy was fronting them drugs, the police orchestrated a controlled delivery of drugs from Fridy. Prior to the informants' meeting with Fridy, the police searched the informants and their vehicle. While keeping in constant visual contact, the police followed the informants to Fridy's residence, saw Fridy exit his residence, enter the back seat of the informants' vehicle, and watched the three drive away. Soon thereafter, the police stopped the informants' vehicle, engaged in a consensual search, and found marijuana behind the front seat—a location near where "Detective Townsend saw Fridy . . . push something up under the driver's seat during the stop." *State's Ex.* 1 at 3. Thereafter, the police verified with Fridy's landlord that the home to be searched was Fridy's residence.

Unlike the facts in *Jaggers* and *Mason*, police corroborated the .critical claim that Fridy was involved in the illegal activity of possessing marijuana when they found the marijuana in the vehicle in which Fridy was a passenger. *See Jaggers*, 687 N.E.2d at 182; *Mason*, 829 N.E.2d at 1017. Because sufficient police work corroborated the informants' statements, there was not need to establish whether the statements were against the informants' penal interests. The probable cause affidavit reflected that the informants' statements were corroborated by the totality of the circumstances. *See* IC 35–33–5–2. Therefore, the State provided probable cause that marijuana would be found in the home, and the police search was valid.

Although we hold that the search was valid and that the evidence should not have been suppressed, we acknowledge the dilemma that the trial court faced. Fridy filed a motion to suppress evidence obtained pursuant to the warrant. Two weeks later, he filed a motion to compel disclosure of the informants' identities, arguing that their presence was required at the hearing on the motion to suppress. After a hearing, the trial court granted Fridy's motion to compel. Thereafter, the State requested a ruling on the motion to suppress stating,

4. The State would like the opportunity to appeal the Court's order requiring disclosure of the informant. In order for the State to make an appeal of right, the Court must make a ruling on the Motion to Suppress.

5. The State would further request a ruling prior to July 29, 2005. In order to seek an appeal, the State must file a Notice of Appeal within 30 days of the Court's ruling. In order to secure our right, the State must file that notice on July 30, 2005, 30 days following the Court's disclosure order.

*Appellant's App.* at 30.

■ As sanction for the State's blatant noncompliance with its order to compel, the trial court granted Fridy's motion to suppress and, thus, effectively dismissed the State's case. While faced with a difficult choice as to what sanction to impose, the trial court imposed the most severe sanction possible. While not expressly before us, we note that this issue will arise again on remand, and in the name of judicial economy we will briefly address it.

■ A motion to compel disclosure of information is a discovery-related proceeding. *Piper v. State,* 770 N.E.2d 880, 882 (Ind.Ct.App.2002), *trans. denied.* Ordinarily "absent clear error and resulting prejudice, the trial court's determination of [discovery] violations and sanctions will be affirmed." *Williams v. State,* 714 N.E.2d 644, 649 (Ind.1999), *cert. denied,* 528 U.S. 1170, 120 S.Ct. 1195, 145 L.Ed.2d 1099 (2000). Trial courts are given wide discretion in discovery matters because they have the duty to promote the discovery of truth and to guide and control the proceedings. *Dye v. State,* 717 N.E.2d 5, 10–

11 (Ind.1999), *cert. denied,* 531 U.S. 957, 121 S.Ct. 379, 148 L.Ed.2d 292 (2000); *Braswell v. State,* 550 N.E.2d 1280, 1283 (Ind.1990); *Fleming v. State,* 833 N.E.2d 84, 91 (Ind.Ct.App.2005). "When remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate where the violation 'has been flagrant and deliberate, or so misleading or in such bad faith as to impair the right of fair trial.'" *Dye,* 717 N.E.2d at 11 (quoting *Kindred v. State,* 524 N.E.2d 279, 287 (Ind.1988)). Our court will affirm a trial court's determination as to a violation of a discovery order and the resultant imposition of sanctions absent clear error and resulting prejudice. *Id.*

Dismissal of a case is an extreme remedy that is warranted only when less severe remedies will not satisfactorily correct the error. *See Johnson v. State,* 749 N.E.2d 1103, 1106 (Ind.2001). In this case, by using the motion to suppress as a sanction, the trial court committed error that resulted in prejudice to the State. Had the trial court omitted from probable cause consideration all evidence that arose solely from the informants' uncorroborated hearsay— an appropriate remedy where the State deliberately fails to comply with a discovery order, *Warren v. State,* 725 N.E.2d 828, 832 (Ind.2000)—the trial court could have both sanctioned the State for its noncompliance, and, as explained above, found sufficient corroborating evidence of probable cause to support the search warrant.

Finding that the trial court erred in granting Fridy's motion to suppress, we reverse and remand for further proceedings consistent with this opinion.[5]

Reversed and remanded.

---

5. On January 4, 2005, the trial court ordered the parties, in pertinent part, to exchange the names and addresses of those witnesses who would testify at trial. *Appellant's App.* at 2. We note that although the State failed to provide the names and addresses of the infor-

DARDEN, J., concurs.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Judge, dissenting.

The posture of the case before us, as I perceive it to be, indicates that the sole issue to be decided is whether the State's refusal to disclose the identity of the informants was a proper basis upon which to grant the motion to suppress. The arguments of the parties at the motion to suppress stage appear to intertwine questions as to whether the information provided to the police by the informants leading to the controlled delivery as set forth in Detective Hoehn's affidavit for the search warrant was against their penal interests and therefore within a hearsay exception.

In the decision issued today, however, the majority states that the opinion addresses "both the question of whether there was probable cause to support the warrant" as well as whether the granting of the motion to suppress was validated by the State's refusal to name the informants. Op. at 839. The majority concludes that there is no reason to decide whether the statements of the informants were against their penal interests because the information provided was corroborated by the police after the traffic stop, more particularly by the discovery of the marijuana in the vehicle in which Fridy was a passenger.

The validity of the traffic stop was never made an issue or argued before the trial court; nor was there any contention made that the consensual search of the vehicle after the stop and discovery of the marijuana in the vehicle was excludable insofar as it might corroborate the earlier information provided to police by the informants. Nevertheless, I do not believe that

the evidence seized from the house pursuant to the search warrant is insulated from further attack.

At the May 17, 2005 hearing upon Fridy's Motion to Compel Disclosure of Confidential Informants, the prosecutor did argue that the State's position was not exclusively that the informants' statements were rendered reliable because against their penal interests. The prosecutor also asserted that the information that Fridy had marijuana at his house and that the informants could obtain marijuana from him in addition to that found with them in the hotel was corroborated by their rendezvous with Fridy at his house, by his entry into their vehicle, and by the discovery of the marijuana in the vehicle. Defendant's articulated position was that he was entitled to the identities of the informants so that they could be questioned as to the reliability of their statements to the police.

The trial court granted the defendant's motion as to disclosure of the identities of the confidential informants. The State then requested that the court rule upon defendant's motion to suppress in order that the State might appeal the court's ruling compelling disclosure of the confidential informants. It had been the defendant's position that he needed the identities of the informants so that they could be called to testify at the motion to suppress hearing.

At a subsequent hearing held on July 19, 2005, the State indicated that it had determined that even with certification of the issue by the trial court, a permissive interlocutory appeal upon the confidential informant disclosure ruling would not lie absent a ruling upon the Motion to Suppress. On

---

mants in connection with the motion to suppress, the informants will be precluded from testifying at trial unless the State complies with the January 4 order and reveals their names.

that date the court entered its order granting the Motion to Suppress. To all indications this ruling was made in order to have the issue of disclosure of the confidential informants placed before the Court of Appeals for resolution.

For this reason, the trial court did not base the grant of the Motion to Suppress upon any consideration that evidence which might have been construed to corroborate the earlier statements by the informants to the police may have been compromised by an invalid traffic stop.

Nevertheless, my review of the record prompts me to comment upon various evidentiary aspects of the case, particularly as such has impact upon the admissibility of evidence seized pursuant to the search warrant.

Initially, I note that the officers did not corroborate that Fridy had delivered marijuana pursuant to a controlled transaction until after the car was stopped and the consent search was made. If therefore there was insufficient basis for the traffic stop, it seems that there was not cause for the search of Fridy's house.[6]

Unless against their penal interests, the statements made by the informants to the police would not have been shown sufficiently reliable upon which to base a search warrant. The crucial information concerning the presence of marijuana in Fridy's house and available, without payment, for sale by the informants was not shown to be independently reliable but rather depended upon corroboration. Such corroboration, if it exists, does so by virtue of a traffic stop not shown to be as a result of a traffic violation or as reasonable suspicion of criminal activity by the occupant or occupants of the vehicle other than the criminal activity in which the informants had previously engaged.[7]

The State did not argue at the trial court level that there was a valid basis for the traffic stop; nor does it do so on appeal. Furthermore, Detective Hoehn's affidavit which prompted issuance of the search warrant does not state the basis for the traffic stop. It states merely that a traffic stop was made after Fridy exited the house and entered the vehicle along with the two informants. State's Exh. 1 at 3.

6. It is well settled that a legitimate traffic stop depends upon whether the officer had reasonable suspicion of criminal activity. If any such suspicion existed at the time of the stop it was necessarily dependent upon the reliability of the information earlier given to police by the informants.

7. In this respect there is no evidentiary indication that, prior to the traffic stop, Fridy was in possession of marijuana when he entered the car nor any evidence that Fridy had agreed to supply additional marijuana. Before the traffic stop was made, any reasonable suspicion of criminal activity had to be based solely upon the prior statements by the informants as to what they *could* do and what they were *willing* to do. Reliance by the police that what the informants said they could do and were willing to do was actually what occurred does not constitute a *reasonable sus-*

*picion* as to the fact. An investigatory stop, as occurred here, may be justified only if "based upon specific and articulable facts" giving rise to a reasonable suspicion of criminal activity. *Sanchez v. State*, 803 N.E.2d 215, 220 (Ind.Ct.App.2004), *trans. denied.* Reasonable suspicion for a brief investigatory stop requires more than "inchoate and unparticularized hunches." *Bridgewater v. State*, 793 N.E.2d 1097, 1100 (Ind.Ct.App.2003), *trans. denied.* Prior to the stop itself the police did not have an objective reasonable suspicion that criminal activity was afoot. All they knew was that Fridy exited the house with one of the informants, entered the car and then drove off. Their suspicion was premised upon a mere hunch that the informants had accomplished or were accomplishing what they said they could accomplish.

I acknowledge that defendant made no claim during the motion to suppress proceedings that the search of the car was pursuant to an invalid traffic stop and that therefore discovery of the marijuana in the vehicle was fruit of a poisonous tree. Nevertheless, upon the facts before us I am unable to conclude that the informants' statements to the police in the hotel and during the lead-up to the controlled delivery were adequately corroborated by the police prior to the traffic stop.

The essential corroboration that Fridy supplied marijuana to the informants and that he had marijuana in the house was provided only by discovery of the marijuana in the car during the consent search and after the car and the informants had been earlier searched by police and found to be clean.

As to the penal interest aspect of the informants' hearsay statements to the officers, this case appear to be analogous to *Newby v. State*, 701 N.E.2d 593 (Ind.Ct. App.1998). The State's argument implies that aside from the marijuana found in possession of the informants at the hotel, their offer to make a controlled delivery from Fridy while under surveillance by the Detectives constituted an additional admission against penal interests. In other words, their offer or agreement to set Fridy up and obtain marijuana from him was against their penal interests in that such a transaction, when consummated, was a criminal offense.

However, here, as in *Newby*, the criminal liability of the informants had already been established by discovery of their possession of marijuana at the hotel. The statements made after that time would not have subjected the informants to any crim-

inal liability over and above the crime already committed and discovered by police.

Neither do I believe that the statements by the informants that they could obtain more marijuana from Fridy were against their penal interests. Such information was merely as to an event which might or might not take place at a future time. It did not subject the informants to any additional criminal liability and was therefore not against their penal interests. See *Newby*, 701 N.E.2d at 600.

In summation, while I agree that refusal by the State to divulge the names and addresses of the informants is not a valid basis to exclude the evidence seized pursuant to the search warrant, I also am of the view that the door remains open upon remand to consideration of the Motion to Suppress in the light of evidence adduced in an evidentiary hearing [8] and in light of the applicable law with regard to the issuance of search warrants. Such an evidentiary hearing might well include consideration of the reliability of the informants' information as buttressed by such corroboration provided by the investigating officers at the time of the traffic stop to the extent that such corroboration comports with the Fourth Amendment of the U.S. Constitution and Article 1, Section 11 of the Indiana Constitution. In connection with evidence of corroboration, it may well be that the validity of the traffic stop may be at issue.

---

8. The ruling upon the Motion to Suppress was, as earlier noted, not made following an

evidentiary hearing.