**STATE of Indiana, Appellant–Defendant,**

v.

**Jessi L. CAMPBELL, Appellee–Plaintiff.**

No. 09A02–0901–CR–83.

Court of Appeals of Indiana.

April 30, 2009.

Transfer Denied July 2, 2009.

Gregory F. Zoeller, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellant.

Patrick J. Roberts, Roberts Law Firm, Peru, IN, Attorney for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

The State appeals the trial court's order granting the motion of Jessi L. Campbell to suppress evidence obtained when officers stopped her vehicle in order to inves-

tigate a report of conduct meeting the definition of criminal confinement. The State presents a single issue for review, namely, whether the trial court erred when it determined that the officers did not have reasonable suspicion to stop Campbell's vehicle.

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of August 23, 2008, Deputy Marshall Mike Clark of the Galveston Police Department received a call from dispatch regarding a fight at Dusty's Tavern.[1] Deputy Marshall Clark arrived at the tavern and questioned two men and a woman in the tavern parking lot. The men denied any knowledge of the event, but the woman stated that the fight had been between a married couple and that the wife's name was Jessi. She further reported that the couple lived in Peru, that the husband had "drugged [sic] the wife into the vehicle[,]" and that they had left in a white Chevrolet Tahoe, turning first onto Sycamore Street then eastbound onto State Road 18 toward Highway 31. Transcript at 8. Deputy Marshall Clark advised dispatch of the report and the direction the Tahoe had been heading. Then he proceeded eastbound on State Road 18 to try to locate the vehicle.

Deputy Joe Nies and two other deputies with the Cass County Sheriff's Department responded by radio to Deputy Marshall Clark's report and stated that they were headed in the direction that the female witness had reported the Tahoe to have been traveling. Driving separate vehicles, the sheriff's deputies turned eastbound on [State Road] 218 "to see if [they] could cut the vehicle off at [the intersection of U.S. Highway] 31 and 218." *Id.* at 14. But the officers did not see the Tahoe before arriving at Highway 31. At the request of Sergeant Zeider, Deputy Nies turned back and headed westbound on 218 in an attempt to locate the Tahoe in case it had turned off onto a county road. Just after Deputy Nies crossed over into Cass County on 218, he observed an eastbound white Tahoe matching the description that Deputy Marshal Clark had given. He then turned around, followed the Tahoe, and advised Sergeant Zeider and Deputy Wells that he had located the vehicle.[2]

Deputy Nies waited for Sergeant Zeider and Deputy Wells to arrive before the three initiated a traffic stop together just across the Cass County border in Miami County on 218. With his headlights shining on the Tahoe in front of him, Deputy Nies saw two people in the Tahoe at the time of the stop, and he saw no other white Tahoes on the road. Sergeant Zeider approached the Tahoe on foot and spoke with Campbell, who had been driving, and her husband, who was bloody, in the passenger seat. Deputy Nies testified that the officers then learned from the occupants of the Tahoe that the husband had been in a fight at the tavern. Sergeant Zeider smelled alcohol, "proceeded to do what he is trained to do at that point in time[,]" and arrested Campbell for operating while intoxicated.[3] Transcript at 29.

---

1. At the suppression hearing, the trial court took judicial notice of where Dusty's Tavern is located, but Deputy Clark did not testify on that issue. We assume the tavern is located in Galveston because Deputy Marshall Clark is a Galveston law enforcement officer and because Campbell cites Deputy Marshall Clark's testimony in her brief to support the statement that Dusty's Tavern is located in Galveston.

2. Neither the parties nor the transcript provide full names or law enforcement affiliations for Sergeant Zeider or Deputy Wells.

3. Neither the parties nor the transcript of the suppression hearing provide details regarding

The State charged Campbell with operating a vehicle while intoxicated endangering a person, as a Class A misdemeanor, and operating a vehicle with an alcohol concentration equivalent of .15 or more, as a Class A misdemeanor. Campbell filed a verified motion to suppress evidence. Following a hearing, the trial court granted the motion. The State now appeals.

## DISCUSSION AND DECISION

■ The State contends that the trial court erred when it determined that the evidence obtained as a result of the stop of Campbell's vehicle must be suppressed. Generally, we review a trial court's decision to grant a motion to suppress as a matter of sufficiency. *State v. Lucas*, 859 N.E.2d 1244, 1248 (Ind.Ct.App.2007) (citing *State v. Moriarity*, 832 N.E.2d 555, 557–58 (Ind.Ct.App.2005)), *trans. denied.* When conducting such a review, we will not reweigh evidence or judge witness credibility. *Id.* Further, the State appeals from a negative judgment and must show that the trial court's ruling on the suppression motion was contrary to law. *See id.* This court will reverse a negative judgment only when the evidence is without conflict and all reasonable inferences lead to a conclusion opposite that of the trial court. *Id.* Nonetheless, we review questions of law, such as the existence of reasonable suspicion, de novo. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind.Ct.App. 2000).

■ The trial court granted Campbell's motion to suppress after finding that the officers lacked reasonable suspicion to

stop Campbell's vehicle. In *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the United States Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot. A *Terry* stop is a lesser intrusion on the person than an arrest and may include a request to see identification and inquiry necessary to confirm or dispel the officer's suspicions. *Hardister v. State*, 849 N.E.2d 563, 570 (Ind.2006) (citing *Hiibel v. Sixth Judicial Dist. Court of Nev.*, 542 U.S. 177, 185–89, 124 S.Ct. 2451, 159 L.Ed.2d 292 (2004)). Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause. *Wilson v. State*, 670 N.E.2d 27, 29 (Ind.Ct.App.1996) (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)). Even if the stop is justified, a reasonable suspicion only allows the officer to temporarily freeze the situation for inquiry and does not give him all the rights attendant to an arrest. *Burkett v. State*, 736 N.E.2d 304, 306 (Ind. Ct.App.2000). To evaluate the validity of a stop, the totality of the circumstances must be considered. *Id.*

In this case, Deputy Marshall Clark received a report from dispatch that a husband had dragged his wife into a white Tahoe at Dusty's Tavern. Such conduct fits the definition of criminal confinement.[4] *See* Ind.Code § 35–42–3–3(a)(2) (person

---

Sergeant Zeider's conversation with Campbell during the traffic stop.

4. Campbell argues, without explanation, that the conduct described by the woman in the parking lot is not, "in and of itself," a crime and that there was no report of violence, threatened violence, or that the wife was

locked in the vehicle or was prevented from leaving the vehicle. But, as noted above, the act of forcibly moving a person from one place to another may constitute criminal confinement. Thus, Campbell's contention must fail.

who knowingly or intentionally removes another person, by fraud, enticement, force, or threat of force, from one place to another commits the offense of criminal confinement, as a Class D felony). Deputy Marshall Clark investigated the report by talking to a woman in the tavern parking lot who had seen the event. She said that the wife's name was Jessi, that the couple involved lived in Peru, and that the couple had left in a white Tahoe, turning out of the tavern parking lot onto Sycamore Street, then eastbound onto State Road 18 toward Highway 31.

Deputy Clark reported the results of his investigation to dispatch. Assuming the couple would be driving to their home in Peru, three Cass County sheriff's deputies who heard the report traveled to the area near the intersection of State Road 218 and Highway 31 in an attempt to intercept the Tahoe. When Deputy Nies spotted the Tahoe traveling eastbound on 218, he turned around to follow it. Subsequently he and the other two sheriff's deputies, who were then traveling westbound toward the Tahoe, initiated a traffic stop. The purpose of finding and stopping the Tahoe was to investigate the welfare of the wife who had reportedly been dragged into the vehicle. Under the totality of circumstances, we conclude that Sergeant Zeider had reasonable suspicion to stop the Tahoe to investigate whether the offense of criminal confinement had been committed.

Campbell argues that the law enforcement officers did not have reasonable suspicion to stop Campbell's Tahoe because they observed no traffic violations to warrant the stop and because Deputy Marshall Clark did not adequately investigate the scene of the alleged criminal confinement. We address each contention in turn.

■ First, a traffic violation is not a condition precedent to a stop otherwise supported by the facts. *See Bannister v. State*, No. 03S04–0904–CR–166, 2009 WL 1058136, 904 N.E.2d 1254 (Ind. April 17, 2009) (holding officer had reasonable suspicion to stop defendant based on license plate check of passing vehicle where check showed defendant had suspended license and gave description of defendant and vehicle that matched what officer had observed). In other words, an officer may make a Terry stop of a vehicle to investigate an offense other than a traffic violation, as long as the officer has reasonable, articulable suspicion that a crime is being or has been committed. Here, the trial court correctly observed at the suppression hearing that officers must corroborate tip information to screen out an "enemy trying to dime you out[.]" *Sentencing Transcript* at 32. But, as we have already stated, the information given by the woman in the tavern parking lot included indicia of reliability when she provided Campbell's first name and town of residence and accurately predicted Campbell's direction of travel. Such information was adequate to give the officers' reasonable suspicion to stop the Tahoe for further investigation.

Similarly, Campbell's other two arguments assert that Deputy Marshall Clark did not adequately investigate the report that a man had forced his wife into a white Tahoe at the parking lot of Dusty's Tavern. To the contrary, Deputy Marshall Clark investigated the report by driving to the tavern and speaking with three people in the parking lot, one of whom witnessed the possible crime and provided the deputy with specific details of what she had observed. And Deputy Marshall Clark testified at the suppression hearing that the couple drove the Tahoe on one of the routes that led from the tavern to Peru.

■ Campbell also argues that Deputy Marshall Clark should have verified the reliability of the report from the woman in the parking lot and that he should have

investigated inside the tavern.[5] Because he did neither of these things, she maintains, law enforcement did not have reasonable suspicion to effect the stop because they acted in "total reliance upon an unknown person's false report[.]" Appellee's Brief at 4. Again, the woman that Deputy Marshall Clark interviewed knew the first name of the wife in the white Tahoe and that the couple lived in Peru. The three sheriff's deputies then intercepted the Tahoe as it was traveling toward Peru on one of the routes that connects Galveston and Peru. Thus, the caller's report accurately predicted the direction in which the Tahoe would be traveling, lending credibility to the reporter's information. Whether or not Deputy Clark had investigated inside the tavern, the information from the woman in the parking lot, when combined with the location where the sheriff's deputies found the Tahoe and the Tahoe's heading, established reasonable suspicion for the sheriff's deputies to conduct a stop to investigate further the report of a possible criminal confinement. *See State v. Glass,* 769 N.E.2d 639, 643 (Ind.Ct.App.2002) ("an investigative stop may be based upon the collective information known to the law enforcement organization as a whole"), *trans. denied.*

Finally, Campbell asserts that the officers lacked reasonable suspicion to stop the Tahoe because there was "no evidence linking the initial dragging incident to the reported fight" in which Campbell's husband had participated in the tavern. But, again, we have already concluded that the officers had reasonable suspicion to stop

the vehicle based on the report of a possible criminal confinement, the description given by the tavern witness, and the location and heading of the Tahoe when located by the Cass County officers. As such, the law enforcement officers were not required to link the report of a possible criminal confinement to a fight at the bar or to any other offense in order to establish reasonable suspicion to stop the Tahoe.

In sum, the trial court erred when it found that the law enforcement officers did not have reasonable suspicion to initiate a stop. A witness told Deputy Marshall Clark that she had seen a husband drag his wife, named Jessi, into a white Tahoe. The witness also said that the couple lived in Peru and that they drove the Tahoe in that general direction. Officers from Cass County Sheriff's Department then intercepted the Tahoe on one of the routes from the tavern to Peru. The witness's accurate prediction of the Tahoe's likely location and direction of travel lent credibility to her information. Thus, we conclude that the officers had reasonable suspicion to stop Campbell's vehicle. As such, the trial court erred when it granted Campbell's motion to suppress evidence obtained as a result of the stop.

Reversed and remanded.

FRIEDLANDER, J., and VAIDIK, J., concur.

---

5. Campbell's argument here is phrased in terms of probable cause. But the trial court's decision was based on a finding that the officers did not have reasonable suspicion. Thus, we review the trial court's decision under the lower reasonable suspicion standard. *See Membres v. State,* 889 N.E.2d 265, 280 (Ind.2008) (" 'Reasonable suspicion is a less demanding standard than probable cause[,] not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause.' ") (citation omitted, alteration original).