Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jan 30 2014, 6:13 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**LISA DIANE MANNING**
Manning Law Office
Danville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JAMES B. MARTIN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DERRICK BARBOUR, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 32A01-1304-CR-144 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Mark A. Smith, Judge
Cause No. 32D04-1109-CM-1297

**January 30, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**VAIDIK, Chief Judge**

**Case Summary**

Derrick Barbour appeals his conviction for Class A misdemeanor operating a motor vehicle with a blood-alcohol concentration greater than or equal to 0.15 and an infraction for driving with a suspended license. Hendricks County Sheriff's Department Deputy Jeff Hughes received a tip that an intoxicated man left the scene of a domestic disturbance driving a red Ford pick-up truck. He then saw a red Ford pick-up truck in the area and initiated a traffic stop after seeing the truck cross the dashed center line twice. The driver of the truck, Barbour, was intoxicated. Barbour argues that Deputy Hughes did not have reasonable suspicion to stop him. We disagree and affirm.

**Facts and Procedural History**

On an early morning in September 2011, Deputy Hughes, while working off-duty employment, received a call from dispatch that there was a domestic disturbance and an intoxicated man left the scene of the disturbance driving a red Ford pick-up truck. As Deputy Hughes approached the area of the dispute in his marked police car, he saw a red Ford pick-up truck driving in the opposite direction on Big Stone Drive. Deputy Hughes saw the truck turn east onto 56th Street. 56th Street is a divided highway with four lanes. Deputy Hughes turned around and began following the truck. He followed the truck for about ten seconds. Deputy Hughes saw the truck drift across the dotted line from the right into the left lane twice. According to Deputy Hughes, "it was almost like he was looking in his rear view mirror how people kind of with my experience a lot of people when you turn around and get behind a vehicle they'll often times drift over like that." Tr. p. 47. Deputy Hughes activated his emergency lights and stopped the red Ford pick-up truck.

2

Deputy Hughes spoke to the driver, who identified himself as Barbour. According to Deputy Hughes, Barbour's eyes were glassy and unfocused. Deputy Hughes also noticed that Barbour was speaking slowly and slurring his words. As he was speaking to Barbour, he also smelled alcohol. Deputy Hughes told Barbour that he was stopped because he drifted out of his lane without signaling. The officer also confirmed that Barbour had just gotten into an argument and left his house in his truck.

Meanwhile, Deputy John Brown heard over the dispatch radio that Deputy Hughes had stopped an individual matching the description of the suspect in the domestic dispute. Deputy Brown drove to the traffic stop because Deputy Hughes was alone. Once Deputy Brown arrived, Deputy Hughes explained to Deputy Brown that he was off-duty.

Deputy Brown told Deputy Hughes that he would continue the investigation. Deputy Brown then spoke with Barbour and informed him that he was continuing Deputy Hughes's investigation. When Deputy Brown spoke with Barbour, he noticed that Barbour was intoxicated. According to Deputy Brown, Barbour had red, bloodshot eyes, was verbally abusive, and was staggering. Deputy Brown could also smell alcohol on Barbour's breath.

Based upon his observations, Deputy Brown administered three standardized field-sobriety tests—the horizontal gaze nystagmus test, the one-leg-walk-and-turn test, and the one-legged-stand test. Barbour failed all three tests. Deputy Brown then determined that he had probable cause to find Barbour intoxicated and invoked Indiana's implied consent law. Barbour consented to taking a chemical breath test at the Brownsburg Police Department; the test showed that Barbour's blood-alcohol concentration was 0.19. Ex. 4.

3

The State charged Barbour with Class A misdemeanor operating a motor vehicle while intoxicated and Class A misdemeanor operating a motor vehicle with a blood-alcohol concentration greater than or equal to 0.15. Appellant's App. p. 10. He was also charged with driving on a suspended license as an infraction. *Id.* at 1.

A bench trial was held. During Deputy Hughes's testimony, Barbour moved to suppress all evidence resulting from the traffic stop for lack of probable cause, arguing that the stop was based on an uncorroborated tip. Tr. p. 63-64. The trial court denied the motion. *Id.* at 64. At the conclusion of trial, Barbour again moved to suppress all evidence resulting from the traffic stop for lack of probable cause, arguing this time that no reasonable suspicion existed because his lane movement was consistent with someone checking their rear-view mirror. *Id.* at 117-19. The trial court again denied the motion. *Id.* at 119.

The trial court found Barbour not guilty of Class A misdemeanor operating a motor vehicle while intoxicated and guilty of Class A misdemeanor operating a motor vehicle with a blood-alcohol concentration greater than or equal to 0.15. *Id.* at 125-26. The trial court also found Barbour guilty of the driving-with-a-suspended-license infraction. The trial court sentenced Barbour to 180 days executed in the Hendricks County Jail and suspended his driver's license for 90 days. *Id.* at 136.

Barbour now appeals.

### Discussion and Decision

Barbour argues that the trial court erred in admitting evidence related to his traffic stop because Deputy Hughes lacked reasonable suspicion to initiate a traffic stop. The

4

admissibility of evidence is within the sound discretion of the trial court, whose decision is afforded great deference on appeal. *Bacher v. State*, 686 N.E.2d 791, 793 (Ind. 1997). We do not reweigh the evidence, and we consider conflicting evidence most favorable to the judgment. *Gunn v. State*, 956 N.E.2d 136, 138 (Ind. Ct. App. 2011). However, this Court reviews de novo the trial court's determination that reasonable suspicion exists. *Sanders v. State*, 989 N.E.2d 332, 334 (Ind. 2013), *reh'g denied*.

Both Article 1, Section 11 of the Indiana Constitution and the Fourth Amendment of the U.S. Constitution protect against unreasonable searches and seizures. An officer "may . . . conduct a brief, investigatory stop when, based on a totality of the circumstances, the officer has a reasonable, articulable suspicion that criminal activity is afoot." *State v. Campbell*, 905 N.E.2d 51, 54 (Ind. Ct. App. 2009), *trans. denied*. "Reasonable suspicion entails some minimal level of objective justification for making a stop, something more than an unparticularized suspicion or hunch, but less than the level of suspicion required for probable cause." *Id.*

Generally, an anonymous tip, without more, is insufficient to support the reasonable suspicion necessary for a brief investigatory stop. *Fuqua v. State*, 984 N.E.2d 709, 714 (Ind. Ct. App. 2013), *trans. denied*. Instead, an anonymous tip must be corroborated by a police officer's own observations or a specific indicia of reliability to establish reasonable suspicion. *Id.* Our Supreme Court has stated:

> [P]recedent dictates that for an anonymous tip to constitute the reasonable suspicion necessary for a valid investigatory stop, at least two conditions must be met. First, significant aspects of the tip must be corroborated by the police. Such corroboration requires that an anonymous tip give the police something more than details regarding facts easily obtainable by the general public to verify its credibility. Second,

5

an anonymous tip, if it is to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior.

*Sellmer v. State*, 842 N.E.2d 358, 361 (Ind. 2006) (quotations, citations, and alteration omitted).

The tip received by Deputy Hughes was corroborated as required under *Sellmer*. After learning that an intoxicated man was driving a red pick-up truck in the area, Deputy Hughes observed Barbour's truck "drift[] over in the fast lane two (2) different times." Tr. p. 47. He drifted over the dotted line without a visible turn signal. *Id.* at 50. Deputy Hughes observed Barbour's erratic driving and concluded that Barbour's truck was the same red pick-up truck that had just left a domestic dispute. Because Deputy Hughes's tip was corroborated, he had reasonable suspicion of impaired driving and properly stopped Barbour to inquire further. Accordingly, the trial court did not abuse its discretion in admitting Deputy Hughes's testimony or the blood-alcohol test results obtained from the chemical blood test following the traffic stop.

Affirmed.

RILEY, J., and MAY, J., concur.